**Ruth MORRISON, Appellee,**

v.

**FIRSTIER BANK, Appellant.**

**No. 93–2856.**

United States Court of Appeals,
Eighth Circuit.

Submitted March 14, 1994.

Decided June 9, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 2, 1994.

---

**66**

David Buntain, Lincoln, NE, argued, for appellant.

Carole McMahon—Boies, Lincoln, NE, argued, for appellee.

Before McMILLIAN, WOLLMAN, and BEAM, Circuit Judges.

WOLLMAN, Circuit Judge.

FirsTier Bank (FirsTier) appeals from the judgment entered on the verdict in favor of Ruth Morrison on her claim that FirsTier had discharged her with the intent to interfere with her right to receive long-term disability benefits, in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. FirsTier argues that the evidence was insufficient to support the jury's verdict and that the district court therefore should have granted its motion for judgment as a matter of law. We reverse.

## I.

Morrison, a teller at FirsTier's 48th and Van Dorn branch in Lincoln, Nebraska, was hospitalized on May 15, 1991, for mental illness that she claims was caused by harassment on the part of two younger tellers. FirsTier placed Morrison on medical leave, and she began receiving short-term disability payments. In mid-September, Morrison wanted to return to work. Morrison and her attorney met with FirsTier personnel on October 1, 1991, to discuss Morrison's desire to resume her duties as a teller. At that meeting, John Mock, FirsTier's director of human resources, told Morrison that she would have to obtain a release from her physician before returning to work.

Dr. Konar, Morrison's clinical psychologist, prepared a release indicating that Morrison would be ready to return to work on a part-time basis on October 28. He proposed that Morrison begin working twenty hours per week, with an increase of four hours every two weeks. The release further stated that "a return to work at her prior job-site with the offending parties removed would help complete the therapeutic process." After receiving the release, FirsTier offered Morrison a position as a safe deposit/vault teller at its 56th and O branch in accordance with Dr. Konar's suggestions regarding hours per

week. Morrison rejected the offer because it would not have placed her in a front teller position.

A week or so later, FirsTier offered Morrison a position as a main teller at the 56th and O branch. Although the position was transitional, Morrison would be placed in a permanent teller position when she resumed working full time. Morrison rejected this offer as well, believing that the position would not relieve the age discrimination that she alleged she had experienced at the 48th and Van Dorn branch.[1] In her rejection letter, Morrison indicated that she would be willing to accept a position at the 13th and Arapahoe branch. The next day, however, Dr. Konar "clarified" his work release, stating that it was conditional on Morrison's return to the 48th and Van Dorn branch and the removal of the two tellers who had allegedly harassed her.

Upon receipt of Dr. Konar's clarification, FirsTier requested, pursuant to its medical leave policy, that Morrison be examined by a physician of its choice. Dr. Baldwin, a psychiatrist, examined Morrison and concluded that she was well enough to return to work without the conditions that Dr. Konar had imposed. Accordingly, FirsTier again offered Morrison the 56th and O position and informed her that if she refused to call or to report at work at that position by 10:00 a.m. on November 25, FirsTier would consider it a declination to return to work and would prepare her separation papers. Morrison did not report to work at that position at the time specified, whereupon FirsTier mailed separation papers to her. Morrison attended an exit interview on December 5. She then initiated this suit.

## II.

■ FirsTier appeals from the denial of its motion for judgment as a matter of law. *See* Fed.R.Civ.P. 50. We review de novo the denial of such a motion. *Kansas City Power & Light Co. v. Ford Motor Credit Co.*, 995 F.2d 1422, 1426 (8th Cir.1993). We consider

the evidence in the light most favorable to Morrison, the nonmoving party, giving her the benefit of all reasonable inferences that may be drawn from the evidence. *TEC Floor Corp. v. Wal–Mart Stores, Inc.*, 4 F.3d 599, 601 (8th Cir.1993) (quoting *Western Am., Inc. v. Aetna Cas. & Sur. Co.*, 915 F.2d 1181, 1183 (8th Cir.1990)). If no reasonable juror could find against FirsTier based upon the evidence so construed, we must reverse the denial of the motion. *First Dakota Nat'l Bank v. St. Paul Fire & Marine Ins. Co.*, 2 F.3d 801, 811 (8th Cir.1993).

Morrison contends that FirsTier terminated her with the intent of interfering with her right to receive long-term disability benefits. Section 510 of ERISA provides that "[i]t shall be unlawful for any person to discharge ... a participant ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. The jury was instructed that to return a verdict in Morrison's favor it had to find that FirsTier had actually or constructively discharged Morrison because she had applied for long-term disability benefits or for the purpose of interfering with Morrison's attaining long-term disability benefits.

■ We agree with FirsTier that there is insufficient evidence to support a finding that FirsTier discharged Morrison. During the discussions that Morrison initiated concerning her return to work, she never indicated that she could not yet resume all the essential duties of a teller. Moreover, there is no evidence that FirsTier believed that Morrison was unable to perform all the essential duties of a teller. Although Dr. Konar's release stated that it was conditional on Morrison's return to the 48th and Van Dorn branch and the removal of the two tellers who had harassed her, the duties of a teller at the 56th and O branch are essentially identical to those of a teller at the 48th and Van Dorn branch. Indeed, Dr. Baldwin concluded that Morrison's ability to return to work did not depend upon the branch to

---

1. Morrison's suit included a claim that FirsTier had discriminated against her on the basis of her age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634. The jury returned a verdict in favor of FirsTier on the age discrimination claim, and Morrison does not appeal from the judgment entered against her following the verdict.

which she returned, an opinion that FirsTier was entitled to rely upon in exercising its judgment regarding the position that Morrison would be offered.

FirsTier's medical leave policy does not permit its employees to dictate the terms upon which they will return to work. The policy provides that employees returning from medical leave "will be reinstated in their former positions if the duration of the leave was six weeks or less." If the leave is more than six weeks, however, FirsTier will make every effort "to place the employee in a comparable position." At the time that Morrison wanted to return from her lengthy leave, there were no vacancies at the 48th and Van Dorn branch. Accordingly, FirsTier was well within its rights to treat Morrison's refusal to accept the comparable position offered her as a decision to resign from her employment with FirsTier. Thus, the evidence is not sufficient to support the verdict that Morrison was actually or constructively discharged.

The judgment is reversed, and the case is remanded to the district court for entry of judgment dismissing the action.