John R. **MORRIS**, Plaintiff,

v.

**WINNEBAGO INDUSTRIES, INC.**, Winnebago Industries Deferred Compensation Plan, and Administrator of the Winnebago Industries Deferred Compensation Plan, Defendants.

No. C 94–3047–MWB.

United States District Court,
N.D. Iowa,
Central Division.

Aug. 6, 1996.

Helen C. Adams and Brent R. Appel of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, Iowa, C. Jean Pendleton of Charnetski, Olson, Lacina & Pendleton, Grinnell, Iowa, for Plaintiff.

Gene R. LaSuer and Steven L. Nelson of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, Iowa, for Defendants.

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

BENNETT, District Judge.

## TABLE OF CONTENTS

I. INTRODUCTION ............................................. 1514

II. STANDARDS FOR SUMMARY JUDGMENT ........................... 1515

III. FACTUAL BACKGROUND ..................................... 1517
 A. Undisputed Facts ................................... 1517
 B. Disputed Facts ..................................... 1519

IV. LEGAL ANALYSIS ......................................... 1520
 A. ERISA And Its Provisions ........................... 1520
 1. Prohibition on "retaliation" and "interference" .... 1520
 2. Fiduciary duty .................................. 1521
 3. Private enforcement ............................. 1522
 B. Morris's Claims .................................... 1522
 1. Wrongful discharge ............................. 1523
 a. The analytical framework .................... 1523
 i. The prima facie case .................... 1523
 ii. Legitimate reason ...................... 1524
 iii. Third-stage requirements ................ 1524
 b. The burden-shifting analysis here ............ 1527
 2. Breach of fiduciary duty and violation of plan terms .. 1529
 a. Breach of fiduciary duty .................... 1531
 b. Violation of terms of the Plan ............... 1533

V. CONCLUSION ............................................. 1535

---

In ruling on the defendants' motion for summary judgment in this ERISA action, the court has unexpectedly encountered a split among the circuits concerning the proper standards for the final stage of a burden-shifting analysis of "wrongful discharge" claims. The court also unexpectedly encountered issues of subject matter jurisdiction over claims of breach of fiduciary duty and violation of the terms of an ERISA plan. Plaintiff alleges that his discharge from employment was motivated by a desire to interfere with his expensive benefits in a deferred compensation plan in violation of § 510 of ERISA, 29 U.S.C. § 510 of ERISA, 29 U.S.C. § 1140. He also alleges that defendants breached their fiduciary duty and violated the terms of the plan, entitling him to remedies under 29 U.S.C. § 1132. Defendants have moved for summary judgment on all three claims, contending that the plaintiff's discharge undisputably was caused by financial difficulties of the company, causing the defendants to eliminate plaintiff's job. They further contend that they acted in compliance with the terms of the plan, thus precluding any claim for breach of fiduciary duty or violation of the plan. Plaintiff contends that genuine issues of material fact preclude summary judgment in defendants' favor on any of his claims. With trial imminent, the court must resolve this long-pending summary judgment motion and the unexpected issues the motion raises.

## I. INTRODUCTION

Plaintiff John R. Morris filed his complaint in this matter on June 27, 1994, asserting three claims pursuant to the Employee Retirement Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461. Defendants are Morris's former employer, Winnebago Industries, Inc., and the Winnebago Industries Deferred Compensation Plan and its Administrator (collectively, "Winnebago"). Morris filed an amended and substituted complaint on July

7, 1995. At issue in this lawsuit are Morris's rights under ERISA in a deferred compensation plan. For his first claim in the amended complaint, Morris alleges that he was wrongfully discharged from his employment as the Director of the Winnebago International Travelers Club on January 10, 1991, in violation of § 510 of ERISA, 29 U.S.C. § 1140. Specifically, he alleges his discharge was motivated by Winnebago's desire to avoid the cost of future retirement, pension, and health benefits to which Morris would have been entitled had he remained employed with Winnebago. In Count II of his complaint, Morris alleges that Winnebago breached its fiduciary duty to him under a deferred compensation plan by failing to disclose facts or misleading him as to the following: computation of benefits under the plan; options regarding leaving his deferred salary in the plan or receiving it at the time of his termination; and the advisability of making a deferral in January of 1991. In Count III of the complaint, Morris alleges that Winnebago violated the terms of the deferred compensation plan by refusing to allow him to make a contribution to the plan in 1991, his fourth year of contributions, and in returning his contributions to the plan to him upon his termination. Morris seeks relief on Counts II and III pursuant to 29 U.S.C. § 1132.

Defendants answered the amended complaint on July 20, 1995, denying all of Morris's claims. They then moved for summary judgment on all counts on September 19, 1995. Plaintiff resisted the motion for summary judgment on October 18, 1995, asserting that genuine issues of material fact preclude summary disposition of his claims. Chief Magistrate Judge John A. Jarvey, to whom the case had been referred owing to the court's crowded docket, heard oral arguments on the motion for summary judgment on October 19, 1995. However, because of his own oppressive case load, Judge Jarvey has not been able to rule on the motion for summary judgment during the intervening months. Because the parties desire a disposition of the motion for summary judgment prior to trial, which has just been continued from the original date of August 5 to August 13, 1996, the court withdraws the referral of this matter to Judge Jarvey and will itself rule on the motion for summary judgment. In addition to rescheduling the trial in this matter, on August 1, 1996, the court struck Morris's jury demand. Therefore, this matter will be tried, if at all, to the court.

Upon the court's review of the case and the motion for summary judgment, it appeared to the court that, in order to resolve the issues raised on summary judgment as to Counts II and III of the amended complaint, the parties should be required to submit further briefing on the relationship between the actual deferred compensation plan document and the Deferred Compensation Plan Information Booklet upon which the parties had founded their arguments. The parties were therefore given the opportunity to supplement their summary judgment briefs on that issue. Winnebago submitted such a supplemental brief by facsimile on August 1, 1996. Morris followed, submitting a supplemental brief by facsimile on August 6, 1996.

The court apologizes for the long delay in ruling on Winnebago's motion for summary judgment, and regrets that Judge Jarvey's and the court's crowded dockets had not allowed for a more timely disposition. However, this matter is now fully submitted and supplemented, and the court turns to the consideration of Winnebago's motion for summary judgment.

## II. STANDARDS FOR SUMMARY JUDGMENT

The Eighth Circuit Court of Appeals recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly 60 years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are

designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini,* 900 F.2d at 1238 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)); *Hartnagel v. Norman,* 953 F.2d 394, 396 (8th Cir.1992).

■■■ The standard for granting summary judgment is well established. *Rule 56* of the Federal Rules of Civil Procedure states in pertinent part:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim … is asserted … may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

*Fed.R.Civ.P.* 56(b) & (c) (emphasis added); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Reliance Ins. Co. v. Shenandoah South, Inc.,* 81 F.3d 789, 791 (8th Cir.1996); *Beyerbach v. Sears,* 49 F.3d 1324, 1325 (8th Cir.1995); *Munz v. Michael,* 28 F.3d 795, 798 (8th Cir.1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.,* 25 F.3d 707, 708 (8th Cir.1994); *Cole v. Bone,* 993 F.2d 1328, 1331 (8th Cir.1993); *Woodsmith Publishing Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir.1990); *Wabun–Inini,* 900 F.2d at 1238 (citing *Fed.R.Civ.P.* 56(c)).[1] A court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, here Morris, and give Morris the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Rifkin v. McDonnell Douglas Corp.,* 78 F.3d 1277, 1280 (8th Cir.1996); *Marts v. Xerox, Inc.,* 77 F.3d 1109, 1112 (8th Cir.1996); *Munz v. Michael,* 28 F.3d 795, 796 (8th Cir. 1994); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994); *Johnson v. Group Health Plan, Inc.,* 994 F.2d 543, 545 (8th Cir.1993); *Burk v. Beene,* 948 F.2d 489, 492 (8th Cir.1991); *Coday v. City of Springfield,* 939 F.2d 666, 667 (8th Cir.1991), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992).

■■ Procedurally, the moving party, here Winnebago, bears "the initial responsibility of informing the district court of the basis for [its] motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553); *see also Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993). Winnebago is not required by Rule 56 to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

■■■ "When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. Morris is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach,* 49 F.3d at 1325. Although "direct proof is not required to create a jury question, … to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be

---

**1.** An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Beyerbach,* 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394.

such as merely to create a suspicion.'" *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir.1985) (quoting *Impro Prods., Inc. v. Herrick*, 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied sub nom. Metge v. Bankers Trust Co.*, 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). The necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir.1994).

In *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11, *Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2553, and *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1355–56, the Supreme Court established that a summary judgment motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). The trial court, therefore, must "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel*, 953 F.2d at 396 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552). If Morris fails to make a sufficient showing of an essential element of a claim with respect to which he has the burden of proof, then Winnebago is "entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552; *Woodsmith*, 904 F.2d at 1247. However, if the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Burk*, 948 F.2d at 492; *Woodsmith*, 904 F.2d at 1247.

Although it postulated the proposition in Title VII cases, the Eighth Circuit Court of Appeals has cautioned that "summary judgment should seldom be used in employment-discrimination cases." *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y*, 931 F.2d 1239, 1244 (8th Cir.1991); *Hillebrand v. M–Tron Indus., Inc.*, 827 F.2d 363, 364 (8th Cir.1987), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)); *see also Hardin v. Hussmann Corp.*, 45 F.3d 262 (8th Cir.1995) ("summary judgments should only be used sparingly in employment discrimination cases," citing *Haglof v. Northwest Rehabilitation, Inc.*, 910 F.2d 492, 495 (8th Cir.1990); *Hillebrand*, 827 F.2d at 364). Summary judgment is appropriate in such cases only in "those rare instances where there is no dispute of fact and where there exists only one conclusion." *Johnson*, 931 F.2d at 1244; *see also Webb v. St. Louis Post–Dispatch*, 51 F.3d 147, 148 (8th Cir.1995) (quoting *Johnson*, 931 F.2d at 1244); *Crawford*, 37 F.3d at 1341 (quoting *Johnson*, 931 F.2d at 1244). The court reasoned that "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." *Crawford*, 37 F.3d at 1341 (holding that there was a genuine issue of material fact precluding summary judgment); *Johnson*, 931 F.2d at 1244. The Eighth Circuit Court of Appeals has recognized that Title VII standards and methods of analysis are otherwise applicable to employment discrimination cases under ERISA. *See, e.g., Kinkead v. Southwestern Bell Telephone Co.*, 49 F.3d 454, 456 (8th Cir.1995) (wrongful discharge claims under § 510 of ERISA are analyzed using the three-stage framework common to Title VII and ADEA cases). Therefore, the court will keep the cautions of the *Crawford* court in mind while considering the present summary judgment motion in this ERISA employment discrimination case. With these standards in mind, the court addresses the factual background to the present litigation.

### III. FACTUAL BACKGROUND

#### A. Undisputed Facts

The parties' statements and submissions confirm that the following facts are undisputed. Morris was first employed by Winneba-

go in November of 1986 as the Director of the Winnebago International Travelers Club. Morris earned good pay raises and enjoyed positive performance evaluations. As part of his compensation and benefits package, Morris received medical, dental, disability, and life insurance benefits, and was allowed to participate in the Winnebago Supplemental Executive Retirement Plan, book unit rights, stock options, profit sharing and retirement plans.

Among his other benefits, Morris was eligible to participate in the Winnebago Deferred Compensation Plan ("the Plan"), which is central to the present lawsuit. Morris made his first election to participate in the Plan in December of 1987 for the 1988 plan year. Morris made deferments for calendar years 1988 through 1990.

During 1990, Winnebago was experiencing serious financial difficulties, and set about addressing its changed circumstances, in part, by eliminating jobs to cut costs. Morris was terminated on January 10, 1991. Winnebago asserts Morris was terminated as part of its campaign of job eliminations. In the twelve months preceding Morris's termination, Winnebago terminated over 130 salaried employees, and Winnebago asserts that most of the terminations resulted from job eliminations. Morris does not contest that Winnebago had serious financial difficulties or that employee terminations and job eliminations were part of its program to combat the problem. He also admits that his termination was to "save money," and that no one at Winnebago told him a substantial cause for his termination was to avoid paying benefits rather than to save money by eliminating his position.

Upon Morris's termination, Winnebago tendered back to Morris his contributions to the Winnebago Deferred Compensation Plan and subsequently refused to allow Morris to leave his contributions in the Plan to accumulate further or to allow Morris to make any further contributions to the Plan. Winnebago asserts that these actions were dictated by the terms of the Plan. Morris does not dispute the amounts he received for severance pay and vacation time. Morris also admits that Winnebago did not violate the terms of any employee benefit plan in which he participated, with the important exception of the Winnebago Deferred Compensation Plan.

Although the parties dispute their meaning, the parties do not dispute that the Deferred Compensation Plan Information Booklet for 1990, which was distributed to employees, has the following pertinent explanations of benefits in question and answer form:

*9. Is there any age or service requirement for electing a deferred income benefit award?*

Regardless of your age, if you are a newly eligible Plan participant you may make a deferral election within 30 days after you've been given the opportunity to defer. However, in all other circumstances, eligible employees who are age 55 or older must have at least 15 years of service to participate in the Plan.

\* \* \* \* \* \*

*17. How are benefits determined if I voluntarily terminate my employment prior to being eligible for early retirement benefits?*

One of the primary reasons Winnebago is offering this Plan to key management employees is to encourage them to continue employment with Winnebago until they reach normal retirement age. If you terminate your employment prior to 5 years' participation in the Plan and attaining the age of 55 years or 20 years of service, you will be entitled to a return of your deferrals plus 6% interest compounded annually. This decision was motivated by the recognition that excessively high rates of return should not be associated with the benefits paid to those participants who terminate early as defined above.

Plaintiff's Exhibit I, Winnebago Deferred Compensation Plan Information Booklet, December 1990 (hereinafter "Plan Information Booklet"), pp. 4, 5. The parties do not contest that the quoted portion identified here as the answer to question number 9 was the result of amendments to the Plan in 1989 that became effective in 1990.

Whatever the meaning of the pertinent provisions of the Plan Information Booklet, Morris was allowed to make contributions to the Plan in 1990. The parties also do not dispute that at the time of his termination, Morris had participated in the Plan for four years and had attained the age of 55. The parties do not dispute that Morris was not terminated voluntarily, and the parties have not identified, and the court has not found, any portion of the Plan Information Booklet that describes eligibility to make contributions or to receive payments upon involuntary termination.

Although no party pointed it out to the court in their original filings,[2] the record demonstrates beyond dispute that the Plan Information Booklet carries the following disclaimer:

*This booklet is designed to communicate the principal features of the Plan. The Plan as described herein is based on an official Plan Document. If there is any discrepancy between this booklet and Plan Document, the Plan Document will govern.*

Plan Information Booklet, p. 10. The Plan Document referred to in this disclaimer was not originally part of the summary judgment record. However, in response to the court's grant of leave for supplemental briefing on the relationship between the Plan Document and the Plan Information Booklet, Winnebago faxed the court a copy of the Plan Document as an attachment to its supplemental brief.

Winnebago states in its supplemental brief that "[i]n this case, there is no conflict between the [Plan Document and the Plan Information Booklet]." Defendant's Supplement To Its Motion For Summary Judgment, p. 1. Notwithstanding Winnebago's assertion, there can be no dispute that the language of the response to question 17 in the Plan Information Booklet differs markedly from the language of the comparable provision of the actual Plan Document. The comparable provision of the Plan Document, Section 7.4, provides, in pertinent part, as follows:

*Section 7.4—Benefits Upon Early Retirement.* Upon a Participant's Termination of Services prior to the Normal Retirement Date the Employer shall pay to the Participant, as compensation for services rendered prior to such Termination of Services, the following benefits:

(a) If the Termination of Services occurs:

(i) before the Total Deferral is completed, *or*

(ii) before the Participant completes 5 years of participation under the Plan, *or*

(iii) before completion of twenty (20) Years of Service, *and* before the Participant attains the age of fifty-five (55) years,

the Employer will pay the Participant an amount equal to the aggregate of all Stated Deferrals previously deferred hereunder together with interest compounded annually on all such amounts, beginning with the dates the deferrals were made and continuing until paid, at the rate determined from time to time by the Committee. Such payment will be a single payment made on the 180th day following the Termination of Services, and will completely discharge the Employer's obligations under the Plan.

Amended And Restated Winnebago Industries, Inc., Deferred Compensation Plan, Effective September 12, 1990, pp. 7–8.

### B. Disputed Facts

The following disputes of fact are supported by the record. The question to be addressed below, in the court's legal analysis, is whether these disputes of fact are material under the governing law, such that they preclude summary judgment on any of Morris's claims. *See, e.g., Fed.R.Civ.P.* 56(c); *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Beyerbach,* 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394.

The central bone of contention between the parties is whether Morris's job was eliminated when he was terminated. Winnebago

---

**2.** Both parties pointed out the disclaimer in their supplemental briefs.

contends that its financial difficulties during 1990 and 1991, and the consequent need to cut costs by eliminating jobs, provide a legitimate, non-discriminatory reason for terminating Morris. Winnebago further contends that Morris's job was entirely eliminated. Morris has come forward with sufficient evidence in the record from which the inference arises that his job was not in fact "eliminated," but was retitled and exactly the same job duties were reassigned to his former assistant, Karen Ebaugh. Morris has also put forward evidence he asserts demonstrates that his termination was not part of a proper job elimination, because it was conducted without the usual involvement of the personnel department, which, according to the personnel director, seeks to assure that job eliminations and other terminations are "done right." The personnel director was in fact on vacation when Morris was terminated, and his assistant was not consulted about Morris's termination either.

Morris asserts that, even if the Plan Document so provides or has been interpreted by Winnebago to so provide, there is at least a genuine issue of material fact as to whether he was ever informed by Winnebago that he was not eligible to make deferred compensation contributions for 1990 or subsequent years. Morris asserts that the record demonstrates that he was in fact allowed to make a deferred compensation contribution for 1990, such that neither the Plan's terms nor Winnebago's interpretation of it could be that such contributions were barred. Morris also contends that, at a minimum, there is a genuine issue of material fact as to whether he was ever told how his benefits under the Plan would be computed or that they would be refunded if he was terminated. Finally, he contends that he was never told that he would not be allowed to leave his contributions in the Plan if he was terminated before reaching a certain age or number of years of participation in the plan. Winnebago contends that it acted in accordance with the terms of the Plan as described in the Plan Information Booklet, which Morris had received as a participant in the plan. Morris's interpretation of the language of the Plan Information Booklet is different.

## IV. LEGAL ANALYSIS

### A. ERISA And Its Provisions

■ President Ford signed ERISA into law on Labor Day 1974. "ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries by regulating the creation and administration of employee benefit plans." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44, 107 S.Ct. 1549, 1551, 95 L.Ed.2d 39 (1987). The purpose of ERISA was to "'assur[e] the equitable character of [employee benefit plans] and their financial soundness.'" *Moench v. Robertson*, 62 F.3d 553, 560 (3d Cir.1995) (quoting *Central States, Southeast and Southwest Areas Pension Fund v. Central Transp., Inc.*, 472 U.S. 559, 570, 105 S.Ct. 2833, 2840, 86 L.Ed.2d 447 (1985), in turn quoting the statute), *cert. denied,* —— U.S. ——, 116 S.Ct. 917, 133 L.Ed.2d 847 (1996). "The statute imposes participation, funding, and vesting requirements on pension plans. It also sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility, for both pension and welfare plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91, 103 S.Ct. 2890, 2896–97, 77 L.Ed.2d 490 (1983) (citations omitted).

#### 1. Prohibition on "retaliation" and "interference"

■ Section 510 of ERISA, codified at 29 U.S.C. § 1140, makes it unlawful for an employer to discharge an employee for the purpose of interfering with ERISA rights:

§ 1140. **Interference with protected rights**

*It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C. § 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this sub-*

chapter, or the Welfare and Pension Plans Disclosure Act. . . .

29 U.S.C. § 1140 (emphasis added). Thus, this section forbids, and gives rise to wrongful discharge claims for, both "retaliation" for exercise of ERISA plan rights, and, as is alleged in this case, "interference" with future ERISA plan benefits. *Kinkead v. Southwestern Bell Telephone Co.,* 49 F.3d 454, 456 (8th Cir.1995) (recognizing both retaliation and interference claims under § 1140); *Morrison v. FirsTier Bank,* 26 F.3d 65, 67 (8th Cir.1994) (§ 1140 is the basis for a claim of interference with ERISA plan benefits); *accord Kowalski v. L & F Prods.,* 82 F.3d 1283, 1287 (3d Cir.1996) ("[T]he plain language of § 510 provides a cause of action for employees who have been discharged 'for exercising any right' to which employees are entitled . . . under an ERISA-protected benefit plan. But section 510 also goes further, protecting employees from interference with the 'attainment of any right to which [the employees] may become entitled.' "). However, § 510 "does not prohibit all employer actions taken with an eye to thwarting the attainment of benefits; only changes in one's *employment status* cannot stem from benefit-based motivations." *Teumer v. General Motors Corp.,* 34 F.3d 542, 545 (7th Cir.1994). Thus, changes to the ERISA plan designed to prevent a specific employee from enjoying benefits about to vest are not prohibited by § 510, but a discharge so motivated is. *Id.* (citing *McGath v. Auto–Body North Shore, Inc.,* 7 F.3d 665, 667–69 (7th Cir.1993)).

■ There appears to be some uncertainty among the circuit courts of appeals as to whether the plaintiff must prove a "specific intent" to interfere with ERISA benefits in order to prevail on a § 510 claim. *Compare Kowalski v. L & F Prods.,* 82 F.3d 1283, 1291 (3d Cir.1996) ("We need not and do not determine whether specific intent is an essential element of a § 510 cause of action," because there was sufficient evidence in the

summary judgment record from which to infer such intent),[3] *with Shahid v. Ford Motor Co.,* 76 F.3d 1404, 1411 (6th Cir.1996) (reiterating its holding that "the plaintiff 'must show that an employer had a specific intent to violate ERISA,'" quoting *Humphreys v. Bellaire Corp.,* 966 F.2d 1037, 1043 (6th Cir.1992)). However, even courts requiring proof of "specific intent" agree that, although the statute says the adverse employment action must be "for the purpose" of interfering with prospective ERISA benefits, "the [employee] need not show that the employer's sole purpose in discharging [the employee] was to interfere with [the employee's] entitlement to benefits but rather only that it was 'a motivating factor' in the decision." *Shahid,* 76 F.3d at 1411 (quoting *Humphreys,* 966 F.2d at 1043); *Daughtrey v. Honeywell, Inc.,* 3 F.3d 1488, 1491 (11th Cir. 1993) (requiring proof of "specific intent" to interfere with ERISA benefits, but only requiring proof that ERISA benefits were "a motivating factor" in an adverse employment decision).

### 2. Fiduciary duty

Furthermore, under ERISA, a fiduciary is obligated to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries. 29 U.S.C. § 1104(a)(1). ERISA sets forth the fiduciary responsibility attaching to employee benefit plans in §§ 1101–1114. Winnebago, as the administrator and fiduciary of the Plan, 29 U.S.C. § 1102(a), was required to conform to the following standard of care:

(1) a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

---

**3.** Indeed, the Third Circuit Court of Appeals decision in *Kowalski,* asserting that it need not decide whether "specific intent" is a required element of a § 510 claim, is distinctly at odds with its prior statement, in *Gavalik v. Continental Can Co.,* 812 F.2d 834, 851–52 (3d Cir.), *cert. denied,* 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d

492 (1987) ("A plaintiff must, however, demonstrate that the defendant had the 'specific intent' to violate ERISA," and "[u]nder the prevailing case law, and in accordance with the statutory language, the essential element of proof under § 510 is specific intent to engage in proscribed activity," internal citations omitted).

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. . . .

29 U.S.C. § 1104.

Section 1104 imposes an "unwavering duty on an ERISA trustee to make decisions with single-minded devotion to a plan's participants . . ." *Adams v. Avondale Indus.,* 905 F.2d 943, 946 (6th Cir.), *cert. denied,* 498 U.S. 984, 111 S.Ct. 517, 112 L.Ed.2d 529 (1990) (quoting *Morse v. Stanley,* 732 F.2d 1139, 1145 (2d Cir.1984)); *see also Donovan v. Bierwirth,* 680 F.2d 263, 271 (2d Cir.), *cert. denied,* 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982). Further, a fiduciary must act in accordance with the documents and instruments governing the plan. 29 U.S.C. § 1104. This requirement of fidelity to the terms of the plan was intended to give effect to one of ERISA's central purposes, which is "to protect the participants and beneficiaries of employee benefit plans by insuring that employees are fully and accurately apprised of their rights under the plan." *Callahan v. Rouge Steel,* 941 F.2d 456, 459 (6th Cir.1991) (citing H.R.Rep. No. 533, 93d Cong. (1973), reprinted in 1974 U.S.Code Cong. & Admin.News 4639, 4648–49, 4657). Finally, the fiduciary must exercise his duties with the care, skill, prudence, and diligence that a prudent man would use under like circumstances. 29 U.S.C. § 1104(a)(1)(B).

In order to determine whether a fiduciary has acted in an arbitrary and capricious manner, the most important factor to weigh is the language of the plan itself as the employees knew or should have known it. *Callahan,* 941 F.2d at 460 (citing *Rhoton v. Central States, Southeast and Southwest Areas Pension Fund,* 717 F.2d 988, 990 (6th Cir.1983)). Misleading communications to plan participants regarding plan administration, including eligibility under a plan and the extent of benefits under a plan, will support a claim for breach of fiduciary duty. *Drennan*

*v. GMC,* 977 F.2d 246, 251 (6th Cir.1992), *cert. denied,* 508 U.S. 940, 113 S.Ct. 2416, 124 L.Ed.2d 639 (1993) (quoting *Berlin v. Michigan Bell Tele. Co.,* 858 F.2d 1154, 1163 (6th Cir.1988)).

### 3. Private enforcement

Section 1132 authorizes causes of action by participants injured by violations of the terms of an ERISA plan, wrongful discharge, and breach of fiduciary duty. *See, e.g., In re Unisys. Sav. Plan Litigation,* 74 F.3d 420, 442 n. 17 (3d Cir.1996) (§ 1132(a)(3) provides for equitable relief to an individual harmed by a breach of fiduciary duty under ERISA); *Cooper Tire & Rubber Co. v. St. Paul Fire & Marine Ins. Co.,* 48 F.3d 365, 369–70 (8th Cir.1995) (participant may obtain relief for violation of terms of the plan under 29 U.S.C. § 1132(a)(3)); *Teumer,* 34 F.3d at 544 (§ 510 is "[m]ade enforceable by participants and beneficiaries through § 502(a)(3)"). It provides, in pertinent part, as follows:

§ 1132. Civil enforcement

(a) Persons empowered to bring a civil action

A civil action may be brought—

(1) by a participant or beneficiary—

\*　　\*　　\*　　\*　　\*　　\*

(B) to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the plan;

\*　　\*　　\*　　\*　　\*　　\*

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan. . . .

29 U.S.C. § 1132(a).

### B. Morris's Claims

Winnebago has moved for summary judgment on all three of Morris's ERISA claims. The court therefore considers Winnebago's

asserted entitlement to summary judgment on each of these claims *seriatim.*

### 1. Wrongful discharge
#### a. The analytical framework

Morris's claim of wrongful discharge is a § 510 claim of "interference" with ERISA plan rights. 29 U.S.C. § 1140. The Eighth Circuit Court of Appeals and other courts have recognized that wrongful discharge claims under § 510 of ERISA "are analyzed using the three-stage framework common to Title VII and ADEA cases." *Kinkead,* 49 F.3d at 456; *Rath v. Selection Research, Inc.,* 978 F.2d 1087, 1089 (8th Cir.1992); *accord Kowalski,* 82 F.3d at 1288 ("We have held that the presumptions and shifting burdens of production used in employment discrimination cases are equally applicable in the context of discriminatory discharge cases brought under § 510 of ERISA."); *Lehman v. Prudential Ins. Co. of Am.,* 74 F.3d 323, 330 (1st Cir.1996) (an ERISA "interference" claim is analyzed according to "the same three stage burden-shifting paradigm" as Title VII or ADEA cases). Thus,

> if a claimant is able to establish a prima facie case of violation of § 510, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. If the employer does so, the burden shifts back to the claimant to prove that the proffered reason is pretextual.

*Kinkead,* 49 F.3d at 456; *Rath,* 978 F.2d at 1089–90; *accord Kowalski,* 82 F.3d at 1289. Winnebago initially asserts that Morris cannot establish the elements of a *prima facie* case of "interference." However, in the event that the court finds Morris's *prima facie* showing to be adequate, Winnebago asserts that it has proffered a legitimate ground to terminate Morris, its financial difficulties, and that Morris cannot establish any genuine issue of material fact that Winnebago's proffered explanation for his discharge is pretextual. The court will therefore examine in more detail each stage of the burden-shifting analysis.

■ **i. The prima facie case.** The first stage of the burden-shifting analysis requires the plaintiff to establish a *prima facie* case of interference with prospective ERISA benefits. To establish a *prima facie* case of interference under § 510, the Eighth Circuit Court of Appeals has said that "a claimant must demonstrate a causal connection between the likelihood of future benefits and an adverse employment action." *Kinkead,* 49 F.3d at 457. However, the Eighth Circuit Court of Appeals provided little other guidance on how the necessary "causal connection" can be demonstrated.

The First Circuit Court of Appeals has explained more fully how the inference of a causal connection is demonstrated by offering a three-element statement of the *prima facie* case of ERISA "interference":

> (1) [the claimant] had the opportunity to attain rights under an ERISA benefit plan; (2) [the claimant] was qualified for the position at issue; and (3) [the claimant] was subjected to adverse action under circumstances that give rise to an inference of discrimination.

*Lehman,* 74 F.3d at 330. Although *Lehman* involved a discriminatory refusal to hire claim, other courts considering discriminatory termination claims are in accord with its statement of the *prima facie* case. *See Little v. Cox's Supermarkets,* 71 F.3d 637, 642 & n. 3 (7th Cir.1995) (noting some inconsistencies among the courts concerning the elements of a *prima facie* case of ERISA interference, and settling on the "Turner/Dister approach," *Turner v. Schering–Plough Corp.,* 901 F.2d 335, 347 (3d Cir.1990) (citing *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1111–12 (2d Cir.1988)), which states the elements as showing that the employee "(1) belongs to the protected class; (2) was qualified for the position involved; and (3) was discharged or denied employment under circumstances that provide some basis for believing that the prohibited intent was present"). In a case involving a "retaliation" claim under § 510 of ERISA, the Eighth Circuit Court of Appeals employed a comparable three-element statement of the necessary *prima facie* case. *Rath,* 978 F.2d at 1090 (describing the elements of a *prima facie* case of "retaliation" under § 510 of ERISA as follows: (1) "that [the plaintiff] participated in statutorily protected activity," (2) "that an adverse employment action was

taken against him," and (3) "that a causal connection existed between the two").

In light of these precedents, the court concludes that a showing of the following three elements would establish the "causal connection" required by the Eighth Circuit Court of Appeals on an ERISA "interference" claim involving the plaintiff's discharge: (1) the plaintiff belonged to the protected class of persons entitled to ERISA benefits; (2) the plaintiff was qualified for the position from which he or she was terminated; and (3) the plaintiff was discharged under circumstances that give rise to an inference of discrimination.

**ii. Legitimate reason.** At the second stage in the analysis, as in a Title VII or ADEA case, to dispel the inference of discrimination arising from the *prima facie* showing, the employer must articulate, but need not prove, a legitimate, non-discriminatory reason for its employment decision. *Kinkead*, 49 F.3d at 456; *Rath*, 978 F.2d at 1089–90; *accord Lehman*, 74 F.3d at 330. In Title VII cases, this burden is often described as "exceedingly light," *see, e.g., Jenkins v. Wal–Mart Stores, Inc.*, 910 F.Supp. 1399, 1419 (N.D.Iowa 1995) (quoting *Batey v. Stone*, 24 F.3d 1330, 1334 (11th Cir.1994), in turn citing *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir.1994)), and in a case involving a claim under § 510 of ERISA, the Third Circuit Court of Appeals also characterized this burden as "relatively light." *Kowalski*, 82 F.3d at 1289. Winnebago's assertion that it was eliminating positions as a cost-cutting measure in the face of financial difficulties is such a legitimate, non-discriminatory reason for its decision to terminate Morris.

**iii. Third-stage requirements.** At the third stage of the analysis, Morris must show, or, at the summary judgment stage of the proceedings, at least establish that there is a genuine issue of material fact as to whether, Winnebago's proffered reason is a "pretext." *Kinkead*, 49 F.3d at 456 (third stage requires claimant to show the employer's proffered reason is a "pretext"). The Eighth Circuit Court of Appeals did not address the nature of the necessary showing of pretext in *Kinkead*, because it found that the

employee had failed to establish her *prima facie* case with any evidence that her termination was motivated by a desire to prevent her from obtaining disability benefits. *Id.* at 457. However, the Third Circuit Court of Appeals very recently stated,

> To survive summary judgment when the defendant articulates a legitimate, non-discriminatory reason for the discharge, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an individual's discriminatory reason was more likely than not reason for the discharge. *Fuentes [v. Perskie]*, 32 F.3d [759,] 764 [ (3d Cir.1994) ] (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993)).

*Kowalski*, 82 F.3d at 1289. The court explained further precisely what kind of evidence was sufficient to show pretext on this third stage of the burden-shifting analysis on summary judgment:

> [T]o avoid summary judgment, [the employee] must point to evidence from which the court could reasonably infer that [the employer's] proffered reasons were fabricated (i.e., pretextual). *Fuentes*, 32 F.3d at 764. We noted that meeting this burden requires the plaintiff to put forth evidence demonstrating that the employer's proffered non-discriminatory reason "was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Id.*

> At a minimum, [the employee] must put forward enough evidence to create a genuine issue of material fact as to whether [the employer's] proffered reasons for the discharge were pretextual. To do this, [the employee] must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." *Id.* at 765.

*Kowalski,* 82 F.3d at 1289. The court found that it did not need to decide if specific intent to discriminate was an essential element of a § 510 claim, because it found that the employee had offered sufficient evidence in the record from which, at the summary judgment stage of the proceedings, the trier of fact could reasonably infer the employer acted with discriminatory intent. *Id.* at 1291. The court wrote,

> The same facts [the employee] offered to show that [the employer's] proffered non-discriminatory reason for terminating her was pretextual can be used to infer [the employer's] specific intent to violate ERISA. In *St. Mary's Honor Center v. Hicks,* [509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993),] the Supreme Court commented that "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if [the] disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the *prima facie* case, suffice to show intentional discrimination." 509 U.S. at 511, 113 S.Ct. at 2749. Indeed, we have similarly held that, "if the plaintiff has pointed to evidence sufficient to discredit the defendant's proffered reasons, to survive summary judgment plaintiff need not also come forward with additional evidence of discrimination beyond his or her *prima facie* case." *Fuentes,* 32 F.3d at 764.

*Kowalski,* 82 F.3d at 1291. Thus, *Kowalski* requires only sufficient evidence to demonstrate pretext to avoid summary judgment at the third stage of a burden-shifting analysis under ERISA.

In contrast to the decision of the Third Circuit Court of Appeals in *Kowalski,* several courts have taken a very strict view of the showing that must be made, even on summary judgment, to pass the third stage of the burden-shifting analysis. These courts have held that the employee must demonstrate that the adverse employment action was motivated by " 'the specific intent of interfering with the employee's ERISA benefits.' " *Lehman,* 74 F.3d at 330 (quoting *Barbour v.*

*Dynamics Research Corp.,* 63 F.3d 32, 37–38 (1st Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 914, 133 L.Ed.2d 845 (1996)); *Daughtrey v. Honeywell, Inc.,* 3 F.3d 1488, 1491 (11th Cir.1993); *McGann v. H & H Music Co.,* 946 F.2d 401, 404 (5th Cir.1991), *cert. denied sub nom. Greenberg v. H & H Music Co.,* 506 U.S. 981, 113 S.Ct. 482, 121 L.Ed.2d 387 (1992); *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1111 (2d Cir. 1988). The First Circuit Court of Appeals explained the necessary showing of this requirement at the summary judgment stage as follows:

> ERISA provides no relief if the loss of an employee's benefits was incidental to, and not the reason for, the adverse employment action. Were this not so, every discharged employee who had been a member of a benefit plan would have a potential cause of action against his or her former employer under ERISA. *Barbour,* 63 F.3d at 37; *see also Dister,* 859 F.2d at 1111. To demonstrate that [the employer] acted with the specific intention of interfering with [the employee's] ERISA benefits, [the employee] must show "(1) that [the employer's] articulated reason for its employment actions was a pretext; *and* (2) that the true reason was to interfere with [the employee's] receipt of benefits." *Barbour,* 63 F.3d at 39 (emphasis added).

*Lehman,* 74 F.3d at 331. Thus, the First Circuit Court of Appeals requires a "pretext-plus" showing to defeat summary judgment on an ERISA employment discrimination claim.[4]

The court has not found an Eighth Circuit Court of Appeals case considering whether a "pretext-only" showing or a "pretext-plus" showing is required to defeat summary judgment on an ERISA wrongful discharge claim. However, very recently, the Eighth Circuit Court of Appeals clarified its position on the required third-stage showing on summary judgment for an ADEA or Title VII claim in *Rothmeier v. Investment Advisers, Inc.,* 85 F.3d 1328 (8th Cir.1996). Because the

---

4. In *Lehman,* an employer's awareness of the high cost of pension benefits, combined with an isolated, ambiguous remark by a company president, which referred to the pensions as a "gift," was insufficient to defeat an employer's summary judgment motion on an interference claim. *Lehman,* 74 F.3d at 331.

Eighth Circuit Court of Appeals has used the same burden-shifting analysis in ERISA cases as in Title VII and ADEA cases, *Kinkead,* 49 F.3d at 456, the court concludes that it should be guided by the statement of the necessary showing on the third stage of the analysis in *Rothmeier.*

In *Rothmeier,* the court noted that before *Hicks,* the federal courts of appeals were divided as to whether an employee could prove employment discrimination simply by showing that the employer's proffered reasons were false. *Rothmeier,* 85 F.3d at 1333. Some circuit courts of appeals, including the Eighth Circuit Court of Appeals, embraced a "pretext-only" rule under which a showing that the employer's proffered explanation was false meant that the employee was automatically entitled to judgment. *Id.* Other courts of appeals espoused a "pretext-plus" rule, requiring more than a simple showing that the employer's proffered reasons were false. *Id.* Instead, "pretext-plus" courts required that an employee also show discriminatory animus and, if the employee could do no more than show that the employer's reasons were not credible, judgment was automatically entered for the employer. *Id.* The Eighth Circuit Court of Appeals found that in *Hicks,* the Supreme Court

> struck a middle ground ... refusing to adopt either pretext-only or pretext-plus as the exclusive test for sufficiency of the evidence in employment discrimination cases. Instead, the test fashioned by the Court for the third stage of the *McDonnell Douglas* analysis is more fact sensitive: whether the employee has provided evidence from which a reasonable factfinder could conclude that the employer intentionally discriminated against the employee for a prohibited reason.

*Rothmeier,* 85 F.3d at 1334 (citing *Hicks,* 509 U.S. at 510–11, 113 S.Ct. at 2748–49). The Eighth Circuit Court of Appeals noted that this test is "consistent with the Supreme Court's admonition that the presumption created by the *prima facie* case drops out of the picture after the employer has met its burden of production, thereby rendering the *McDonnell Douglas* framework no longer relevant." *Id.* However, the ultimate question remains whether the employer engaged in intentional discrimination. *Id.*

The Eighth Circuit Court of Appeals then noted that whether or not a case requires evidence beyond a showing of pretext "is necessarily a fact-intensive determination and must be decided on a case-by-case basis." *Id.* at 1335. The court quoted with approval the explanation of this middle-ground approach by the First Circuit Court of Appeals:

> [T]he Supreme Court envisioned that some cases exist where a *prima facie* case and the disbelief of a pretext could provide a strong enough inference of actual discrimination to permit the fact-finder to find for the plaintiff. Conversely, we do not think that the Supreme Court meant to say that such a finding would always be permissible.... The strength of the *prima facie* case and the significance of the disbelieved pretext will vary from case to case depending on the circumstances. In short, everything depends on the individual facts.

*Id.* (quoting *Woods v. Friction Materials, Inc.,* 30 F.3d 255, 261 n. 3 (1st Cir.1994), which affirmed summary judgment in favor of the employer). Thus, the court stated the following rule in this circuit for what an age-discrimination plaintiff must show to defeat summary judgment, which this court here modifies to state the rule in terms of an ERISA-discrimination plaintiff:

> [A]n [ERISA]-discrimination plaintiff can avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that [entitlement to prospective ERISA benefits] was a determinative factor in the adverse employment decision. The second part of this test sometimes may be satisfied without additional evidence where the overall strength of the *prima facie* case and the evidence of pretext "suffice[s] to show intentional discrimination." The focus, however, always remains on the ultimate question of law: whether the evidence is sufficient to create a genuine issue of fact as to whether the employer intentionally discriminated against the plaintiff because

of the plaintiff's [entitlement to prospective ERISA benefits].

*Rothmeier,* 85 F.3d at 1336–37 (modified to state the rule in terms of an ERISA "interference" claim). In *Rothmeier,* the court found that the employer was entitled to summary judgment. *Id.* at 1337. The age-discrimination plaintiff had "presented neither direct evidence of age discrimination nor sufficient circumstantial evidence for a reasonable factfinder to infer that [the plaintiff's] age 'actually motivated' his employer's decision to discharge him," because "his *prima facie* case and his evidence of pretext were insufficient, as a matter of law, to allow a reasonable factfinder to infer intentional discrimination based on age." *Id.*

### b. The burden-shifting analysis here

 In this case, Morris's *prima facie* showing is not particularly strong. Morris asserts that his *prima facie* case is met, because it is undisputed that he was an employee who was participating in and entitled to the benefit of the Plan, his qualifications and the quality of his job performance are not in dispute, and his termination resulted in substantial savings to the company. However, termination of any employee results in substantial savings to the company, in salary, other non-ERISA benefits, and other resources, and therefore savings on ERISA-protected benefits may be merely incidental to that savings. Hence, in *Daughtrey v. Honeywell, Inc.,* 3 F.3d 1488 (11th Cir.1993), the Eleventh Circuit Court of Appeals found inadequate the claimant employee's efforts to establish that her discharge had been for the purpose of interfering with her ERISA benefits in an attempt to defeat the employer's summary judgment motion:

"[M]easures designed to reduce costs in general that also result in an incidental reduction in benefit expenses do not suggest discriminatory intent. Instead, the employee must introduce evidence suggesting that the employer's decision was directed at ERISA rights in particular." *Clark [v. Coats & Clark, Inc.],* 990 F.2d [1217,] 1224 [ (11th Cir.1993) ] (citations omitted). As in *Clark,* the evidence concerning the elimination of [employee's division] is "indicative of an attempt to cut

costs in general rather than interference with the employees' ERISA rights." *Id.* at 1224. Because the evidence offered by [the employee] shows only "the incidental loss of benefits as a result of a discharge," the district court properly granted summary judgment on [the employee's] section 1140 claim for her layoff in 1986. *Seaman [v. Arvida Realty Sales],* 985 F.2d [543,] 546 [ (11th Cir.1993), *cert. denied,* 510 U.S. 916, 114 S.Ct. 308, 126 L.Ed.2d 255 (1993) ]; *see also Conkwright v. Westinghouse Elec. Corp.,* 933 F.2d 231, 239 (4th Cir.1991); *Clark v. Resistoflex Co.,* 854 F.2d 762, 771 (5th Cir.1988).

*Daughtrey,* 3 F.3d at 1492. Unlike *Daughtrey,* Morris's entire division was not eliminated. However, as Winnebago has hastened to add, salaried employees in all departments at Winnebago had been targeted in a general cost-cutting scheme.

The court finds that Morris has, but only barely, "demonstrate[d] a causal connection between the likelihood of future benefits and an adverse employment action" sufficient to establish his *prima facie* case. *Kinkead,* 49 F.3d at 457. However, Winnebago has clearly met its burden to produce a legitimate, non-discriminatory reason for its discharge decision based on its program of cost-cutting and job elimination. *Id.* In light of Morris's adequate, if weak, *prima facie* showing, and Winnebago's proffer of a legitimate, non-discriminatory reason for terminating, its financial difficulties, the court arrives at the third stage of the burden-shifting analysis, where it must determine whether the standards clarified in *Rothmeier* have been met.

 On the third stage of the analysis, Morris makes a better distinction from *Daughtrey.* He asserts that, unlike the plaintiff in that case, who failed to offer any evidence to rebut the employer's legitimate, non-discriminatory reason, *Daughtrey,* 3 F.3d at 1492, he has offered evidence of pretext that is "exceptionally strong." Morris asserts that his evidence of pretext is his showing that his job elimination was a "sham," and his evidence that, according to Winnebago's own personnel director, his termination was not "done right." Further-

more, Morris points to the personnel director's observation that if a job is eliminated, it is not the job of the department head, because departments do not run themselves.

Morris's assertion that the "job elimination" reason is a "sham" is that his job did not cease to exist, but was instead renamed, and all of his former duties were simply passed to his former assistant. Some consolidation of duties is necessarily to be expected in a reduction-in-force case. *Kunzman v. Enron Corp.,* 902 F.Supp. 882, 896 (N.D.Iowa 1995) (in an age-discrimination case, the court noted that in a reduction in force, a job is either eliminated or combined with another). The question is whether Morris's job continued to exist in its various parts. *See, e.g., Fink v. Kitzman,* 881 F.Supp. 1347, 1364 (N.D.Iowa 1995) (citing *Hardin v. Hussmann Corp.,* 45 F.3d 262, 265 (8th Cir.1995), as stating survival of a job in its various parts as one of the elements of a *prima facie* case of age discrimination in a reduction-in-force case). However, Morris's evidence suggests that his job not only continued to exist in its various parts, but continued to exist in its entirety, because his duties were passed wholesale to a former subordinate. In these circumstances, a reasonable inference can be drawn that Morris's job was not the one eliminated; rather, it was the subordinate's job that was in fact eliminated, which suggests that it was the incumbent of Morris's job, not the job itself, that was the target of the job elimination. To this evidence is coupled the exclusion of the personnel department from the process leading to Morris's termination and the personnel director's testimony that Morris's termination was not "done right."

This evidence may go a long way toward establishing that the reason given for Morris's termination, a general program of job elimination and specific elimination of Morris's job, was in fact a pretext for terminating Morris. Thus, the first requirement to avoid summary judgment, under the rule stated in *Rothmeier,* has certainly been met here, because there is "a fact issue as to whether the employer's proffered reasons are pretextual." *Rothmeier,* 85 F.3d at 1336. The critical part of the *Rothmeier* test in this case, there-

fore, is the second requirement, whether Morris has created a reasonable inference that ERISA benefits were a determinative factor in his discharge. *Id.* at 1337. The court has grave doubts that the evidence considered so far raises any strong inference that *interference with Morris's ERISA benefits* was the "actual motivation" for Morris's termination. *Id.* at 1337 (to defeat summary judgment on third stage of burden-shifting analysis, plaintiff must present either direct evidence of age discrimination or sufficient circumstantial evidence "for a reasonable factfinder to infer that [the protected characteristic] 'actually motivated' his employer's decision to discharge him"). The court finds that this second part of the test cannot be satisfied here without "additional evidence," in light of the relative weakness of the *prima facie* case, and the relative strength of the showing of pretext, which nonetheless is equivocal as to whether interference with ERISA benefits was the determinative factor. *Id.* In other words, this is not a case in which "the evidence of plaintiff's prima facie case and the evidence of pretext are sufficient, considered together, to allow a reasonable factfinder to conclude that the defendant has intentionally discriminated against the plaintiff" such that " 'no additional proof of discrimination ... [is] required.' " *Id.* at 1335 (quoting *Hicks* ).

Perhaps recognizing the weakness of the showing so far, Morris has attempted to present some "evidence beyond a showing of pretext to support a finding of intentional discrimination." *Id.* at 1335. Morris has attempted to tighten the causal connection between his ERISA entitlements and his termination, principally relying on a decision in *Folz v. Marriott Corp.,* 594 F.Supp. 1007 (W.D.Mo.1984). Morris asserts that, in the grand scheme of things, his salary was a small gain in cost-cutting, but his package of benefits was a much richer target, citing *Folz,* 594 F.Supp. at 1014. Assuming that he would have been entitled to more benefits if he had been employed through his fifth year of participation in the Plan, he also asserts that his termination close to that vesting

point, at four years and two months, raises an inference of illegal motive. *Id.*[5]

It is at this point that the court finds the cautions of the Eighth Circuit Court of Appeals in *Crawford* come into play. *Crawford,* 37 F.3d at 1341 (holding that "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant," and summary judgment is appropriate in such cases only in "'those rare instances where there is no dispute of fact and where there exists only one conclusion,'" quoting *Johnson,* 931 F.2d at 1244). The court cannot say that this is a case in which, upon the present record, "there exists only one conclusion." *Id.* Rather, the court concludes that, upon the evidence offered, there is a reasonable inference that entitlement to prospective ERISA benefits was a determinative factor in Winnebago's adverse employment decision. *Rothmeier,* 85 F.3d at 1336–37; *Crawford,* 37 F.3d at 1341 (summary judgment is appropriate only when there is no reasonable inference in support of the discrimination claim). This inference, coupled with at least a genuine issue of material fact on pretext, suffice to avoid summary judgment on Morris's wrongful discharge claim. *Id.*

This is not to say that the court would necessarily find the evidence Morris points to in the summary judgment record persuasive if it was all the evidence proffered at trial. Rather, the court reiterates its conclusion that the evidence is not such that, at the summary judgment stage of the proceedings, "there exists only one conclusion." *Crawford,* 37 F.3d at 1341.

Like the Third Circuit Court of Appeals in *Kowalski,* this court passes for now on the issue of whether "specific intent" to interfere with Morris's ERISA benefits must ultimately be proved if Morris is to prevail on his § 510 ERISA claim, because the court finds there is sufficient evidence in the record to raise a reasonable inference of discriminatory intent. *Kowalski,* 82 F.3d at 1291. Indeed, the uncertainty over whether "specific intent" is a required element of a § 510 claim appears to be the product of decisions more recent than the parties' briefing of the motion for summary judgment.[6] In its original brief, Winnebago did contend that Morris would ultimately have to prove that "the employer had the specific intent to interfere with the employee's right to benefits," Defendant's Brief In Support Of Motion For Summary Judgment, p. 5 (quoting, *inter alia, Daughtrey,* 3 F.3d at 1491), but urged only that "Morris cannot generate a genuine issue of material fact on the element of intent." *Id.* at p. 10. In light of the silence of the Eighth Circuit Court of Appeals on whether "specific intent" is a required element of a § 510 claim,[7] the uncertainty of recent decisions of the Circuit Courts of Appeals on the issue, and the court's finding, contrary to Winnebago's contentions, that Morris has generated a genuine issue of material fact on discriminatory intent, the court will not here decide whether the "specific intent" to interfere with ERISA benefits is a required element of Morris's § 510 cause of action.

That portion of Winnebago's summary judgment motion pertaining to Count I of Morris's amended complaint will be denied.

### 2. Breach of fiduciary duty and violation of plan terms

■ In Count II of his complaint, Morris alleges that Winnebago breached its fiducia-

5. Morris also asserts that, irrespective of any "vesting" question, his continued participation in other benefits plans would have imposed a considerable cost upon Winnebago, which he asserts supports his ERISA claim. The court is not persuaded that an assertion of the cost of other elements of his benefits package necessarily shows that Morris's ERISA benefits were the target of his discharge. Instead, the existence of other elements of a "rich" package of benefits not protected by ERISA might suggest that cutting the ERISA benefits was merely incidental to the cost-savings of eliminating Morris's job.

6. The parties originally briefed the motion for summary judgment in September and October of 1995. The *Kowalski* decision was decided on May 2, 1996, and the countervailing opinion on the "specific intent" requirement cited here, the decision of the First Circuit Court of Appeals in *Lehman,* 74 F.3d at 331, was decided on January 22, 1996.

7. Neither *Kinkead,* 49 F.3d at 456–57, nor *Rath,* 978 F.2d at 1089–91, addresses this issue.

ry duty to him under the Plan by failing to disclose facts or misleading him as to the following: computation of benefits under the plan; options regarding leaving his deferred salary in the plan or receiving it at the time of his termination; and the advisability of making a deferral in January of 1991. In Count III, Morris alleges that Winnebago violated the terms of the Plan by failing to notify him of his right to make contributions for a fourth year, 1991, and by failing to allow him to leave his prior contributions in the Plan. Winnebago has moved for summary judgment on these claims, asserting that its conduct complied with the terms of the Plan as explained in the Plan Information Booklet. Winnebago contends that it could not have any duty to disclose options that Morris did not have.

However, the court perceives an antecedent question to whether Winnebago is entitled to summary judgment on Morris's claims of breach of fiduciary duty and violation of the terms of the Plan. That question is whether this court has subject matter jurisdiction over Morris's claims of breach of fiduciary duty and violation of the terms of the plan, because Morris may lack standing to assert such claims.[8]

Both the claim of breach of fiduciary duty and the claim of violation of the terms of the Plan are brought pursuant to § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). The Eighth Circuit Court of Appeals recently addressed who has standing to bring such claims in *Adamson v. Armco, Inc.*, 44 F.3d 650 (8th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 85, 133 L.Ed.2d 42 (1995):

Only a "participant" or a "beneficiary" may bring a civil enforcement action under §§ 502(a)(2) and (a)(3). A participant or a beneficiary is defined in ERISA as someone "who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. §§ 1002(7), (8). The Supreme Court construed this statutory definition in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. [101,] 117–18, 109 S.Ct. [948,] 957–58 [103 L.Ed.2d 80 (1989) ]:

In our view, the term "participant" is naturally read to mean either employees in, or reasonably expected to be in, currently covered employment, or *former employees* who have a reasonable expectation of returning to covered employment or *who have a colorable claim to vested benefits.* In order to establish that he may become eligible for benefits, a claimant must have a colorable claim that (1) he will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future.

(Emphasis added; citations and internal quotations omitted). Appellants do not presently have a colorable claim for vested benefits because all their benefit claims are time-barred. The fact that they were plan participants in the past is irrelevant. "The statute by its terms does *not* permit a civil action by someone who *was* a participant at the time of the alleged ERISA violation. Rather, it is written in the present tense, indicating that current participant status is the relevant test." *Raymond v. Mobil Oil Corp.,* 983 F.2d 1528, 1534–35 (10th Cir.) (emphasis in original; citations omitted), *cert. denied,* 510 U.S. 822, 114 S.Ct. 81, 126 L.Ed.2d 49 (1993).

*Adamson,* 44 F.3d at 654. The Eighth Circuit Court of Appeals then reiterated its recognition of an exception for cases in which " 'but for the employer's conduct alleged to be in violation of ERISA,' the employee or former employee would be a plan participant." *Id.* (quoting *Christopher v. Mobil Oil Corp.,* 950 F.2d 1209, 1221 (5th Cir.), *cert. denied,* 506 U.S. 820, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992), and citing as in accord *Mullins v. Pfizer, Inc.,* 23 F.3d 663, 666–68 (2d Cir.1994), and *Vartanian v. Monsanto Co.,* 14 F.3d 697, 700–01 (1st Cir.1994)). The court found that the Eighth Circuit Court of Appeals had adopted the exception without discussing it in *Howe v. Varity Corp.,* 36

---

**8.** The court has raised this issue *sua sponte,* because federal courts are courts of limited jurisdiction and must assure themselves that they have subject matter jurisdiction over claims before them at all stages of the proceedings, even if the parties do not raise the question of subject matter jurisdiction themselves. *McCorkindale v. American Home Assur. Co.,* 909 F.Supp. 646, 649 n. 4 (N.D.Iowa 1995); *Laird v. Ramirez,* 884 F.Supp. 1265, 1269–70 (N.D.Iowa 1995).

F.3d 746 (8th Cir.1994), *aff'd,* —— U.S. ——, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1995). *Adamson,* 44 F.3d at 655. The court then restated the exception very narrowly, holding that "[t]his exception only applies when the fiduciary's breach of duty has deprived the § 502(a)(2) or § 502(a)(3) plaintiff of participant status. It does not apply to claimants whose loss of participant status resulted from their own actions." *Id.*

Even giving Morris's claims of breach of fiduciary duty and violation of the terms of the Plan their most generous reading, Morris does not allege that either the breach of fiduciary duty or violation of Plan terms deprived him of his participant status. Rather, he contends that he was deprived of participant status when he was terminated in violation of ERISA's anti-interference provisions. It might appear, therefore, that Morris lacks standing to pursue his claims of breach of fiduciary duty claim and violation of the terms of the Plan. *Id.* However, the narrow statement of the exception in *Adamson* arose in a case where only a claim for benefits, brought under § 1132(a)(1), and a claim of breach of fiduciary duty were presented. *Id.* at 652–55. The present case is therefore distinguishable, despite the fact that Morris does not allege that he was deprived of "participant" status by a breach of fiduciary duty or by violation of the terms of the Plan, as Morris may fall under the Supreme Court's construction of who is a "participant." *See Bruch,* 489 U.S. at 117–18, 109 S.Ct. at 957–58. If Morris demonstrates that his termination was in violation of ERISA's anti-interference provision, § 1140, then he will be a "former employee who ha[s] a reasonable expectation of returning to covered employment." *Id.* If Morris succeeds on his "interference" claim, he may be entitled to reinstatement, and he has sought such relief in the prayer to that claim. Thus, the court concludes that Morris has standing to pursue his claims of breach of fiduciary duty and violation of terms of the Plan *only if* he first prevails on his "interference" claim. If he fails on his "interference" claim, he necessarily lacks standing on his remaining two claims, because he will have no reasonable expectation of returning to covered employment, *Bruch,* 489 U.S. at 117–18, 109 S.Ct. at

957–58, and he does not allege that anything but his wrongful termination deprived him of his participant status. *Adamson,* 44 F.3d at 655.

### a. Breach of fiduciary duty

■ Assuming for the moment that Morris will be able to establish standing to pursue his breach of fiduciary duty claim by prevailing on his wrongful discharge claim, the court will also consider whether Winnebago would otherwise be entitled to summary judgment on that claim. However, the court finds that Winnebago's contention that it complied with the terms of the Plan, as embodied in the Plan Information Booklet, and disclosed those terms by providing the Plan Information Booklet, does not dispose of Morris's allegations. Under the fiduciary duty imposed upon it by ERISA, Winnebago may not *mislead* plan participants about the terms of the plan by the disclosures it makes. *In re Unisys Sav. Plan Litigation,* 74 F.3d at 440 (observing that the court had "repeatedly held that a fiduciary may not materially mislead those to whom section 1104(a)'s duties of loyalty and prudence are owed," and citing cases so holding); *In re Unisys Corp. Retiree Medical Benefit "ERISA" Litigation,* 57 F.3d 1255, 1261 (3d Cir.1995) ("the fiduciary may not materially mislead those to whom the duties of loyalty and prudence are owed."), *cert. denied sub nom. Unisys Corp. v. Pickering,* —— U.S. ——, 116 S.Ct. 1316, 134 L.Ed.2d 470 (1996). Morris has pleaded both non-disclosure and misleading disclosures.

Regarding an ERISA fiduciary's duty to inform, the Third Circuit Court of Appeals has held that

under section 1104(a) "[a] plan administrator may not make affirmative material misrepresentations to plan participants when asked about changes to an employee pension benefits plan. *Put simply, when a plan administrator speaks, it must speak truthfully.*" [*Fischer v. Philadelphia Elec. Co.,*] 994 F.2d [130,] 135 [ (3d Cir.), *cert. denied,* 510 U.S. 1020, 114 S.Ct. 622, 126 L.Ed.2d 586 (1993) ]. We also concluded that *a misrepresentation was "material" if there was a "substantial likelihood that it*

would mislead a reasonable employee in making an adequately informed decision about if and when to retire." *Id.* Because the content of the communications at issue and whether such communications constituted affirmative, material misrepresentations were questions of fact, we reversed the summary judgment that had been entered for the defendant and remanded the case for trial. *Id.*

\* \* \* \* \* \*

Most recently, [in] *In re Unisys Corp. Retiree Medical Benefit "ERISA" Litigation,* 57 F.3d 1255 (3d Cir.1995), we reaffirmed that *an ERISA fiduciary has a duty under section 1104(a) to convey complete and accurate information when it speaks to participants and beneficiaries regarding plan benefits....* [In that case,] we upheld the district court's decision to permit the plaintiffs' breach of fiduciary duty claim to proceed where the evidence established "that the [defendant] company actively misinformed its employees by affirmatively representing to them that their medical benefits were guaranteed once they retired, when in fact the company knew this was not true and that employees were making important retirement decisions relying upon this information...." *Id.* at 1266–67.

*In re Unisys Sav. Plan Litigation,* 74 F.3d at 441–42 (emphasis added); *see also In re Unisys Corp. Retiree Medical Benefit "ERISA" Litigation,* 57 F.3d at 1261–62. Thus, a participant may base a claim of breach of fiduciary duty on allegations that a plan administrator affirmatively and materially misrepresented the terms of a plan. *Id.; In re Unisys Corp. Retiree Medical Benefit "ERISA" Litigation,* 57 F.3d at 1264; *Anweiler v. American Elec. Power Serv. Corp.,* 3 F.3d 986, 991 (7th Cir.1993) ("Fiduciaries [under ERISA] breach their duties of loyalty and care if they mislead plan participants or misrepresent the terms or administration of a plan," citing *Berlin v. Michigan Bell Tel. Co.,* 858 F.2d 1154, 1163 (6th Cir.1988)).

Morris's first two allegations of misleading disclosures are that Winnebago misled him or misrepresented to him computation of benefits under the plan and options regarding leaving his deferred salary in the plan or receiving it at the time of his termination. Both of these alleged misrepresentations or misleading statements stem from Section 7.4 of the Plan Document and the explanation of that provision in answer to question 17 in the Plan Information Booklet. Although Winnebago rather brazenly asserts that there are no conflicts between the terms of the Plan and the explanation of those terms in the Plan Information Booklet, the court concludes that conflicts are obvious. Again, the explanation in the Plan Information Booklet states, "If you terminate your employment prior to 5 years' participation in the Plan and attaining the age of 55 years or 20 years of service, you will be entitled to a return of your deferrals plus 6% interest compounded annually," Plan Information Booklet, p. 5. However, the Plan Document actually states, "If the Termination of Services occurs: (i) before the Total Deferral is completed, *or* (ii) before the Participant completes 5 years of participation under the Plan, *or* (iii) before completion of twenty (20) Years of Service, *and* before the Participant attains the age of fifty-five (55) years, the Employer will pay the Participant [the aggregate of deferrals plus interest]." Plan Document, § 7.4, pp. 7–8 (underlining in the original). Thus, the Plan Information Booklet makes no reference whatsoever to a requirement that the employee have completed "Total Deferral" prior to termination to be allowed to leave contributions in the Plan. Furthermore, in the requirements it attempts to disclose, the Plan Information Booklet completely mislocates all of the conjunctions, thus stating an entirely different set of conditions as determinative of an employee's right to a refund plus interest or right to leave contributions in the Plan.[9] Winnebago had a fiduciary duty to disclose the terms of the Plan, which it did not do as to the requirement of contribution of "Total Deferral," and a further duty to

9. The court finds these differences so patent that it need not discuss in detail the differing interpretations the parties have offered for the meaning of the language in the Plan Information Booklet nor need it discuss how any of those interpretations would differ from the interpretation of the actual Plan Document.

make accurate disclosures, which it did not do as to the remaining terms of Section 7.4 of the Plan Document. *See, e.g., In re Unisys Sav. Plan Litigation,* 74 F.3d at 441–42. Put simply, in explaining the terms of Section 7.4 in the Plan Information Booklet, Winnebago did not " 'speak truthfully' " as required. *In re Unisys Sav. Plan Litigation,* 74 F.3d at 441–42 (quoting *Fischer,* 994 F.2d at 135).

Although the court finds Winnebago's disclosure of these terms in the Plan Information Booklet is misleading, that does not mean that Morris necessarily prevails on his breach of fiduciary duty claim or even that Winnebago's motion for summary judgment on that claim is defeated. Whether Morris can prevail on his breach of fiduciary duty claim remains to be seen, because the court has not, and cannot yet, determine whether the inaccurate disclosures were material to Morris's participation in the Plan. The court certainly believes that there is a reasonable inference that the improper disclosure of the terms of Section 7.4 was material to Morris's decision to participate in the Plan, *i.e.,* that "there was a 'substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision about if and when' " to participate in the Plan. *In re Unisys Sav. Plan Litigation,* 74 F.3d at 441–42 (quoting *Fischer,* 994 F.2d at 135). However, because whether such communications constituted affirmative, material misrepresentations are questions of fact, summary judgment is inappropriate. *Id.*

 Furthermore, the court finds that Winnebago is not entitled to summary judgment even as to Morris's third allegation of breach of fiduciary duty, which alleged that Winnebago failed to make disclosures or made misleading disclosures concerning the advisability of making a deferral in January of 1991. The court can find no provision of the Plan Document that is comparable to the provisions described in answer to question number 9 in the Plan Information Booklet upon which Winnebago relies as the basis for refusing to accept any of Morris's contributions after 1990. The court does not find in the summary judgment record any indication of a set of rules or regulations promulgated by the administrative committee concerning the Plan in which such a provision is stated. Winnebago asserts in its supplemental brief that the Plan Information Booklet does not stand in the same relation to a Plan Document as a summary plan document, and the court therefore cannot and will not find that the Plan Information Booklet is an adequate statement of the undisputed terms of the Plan.[10] Thus, Winnebago has failed to establish any basis in the record for asserting that it is undisputed that Winnebago's refusal of Morris's further contributions was in compliance with the terms of the plan. *See Reed,* 7 F.3d at 810; *Hartnagel,* 953 F.2d at 395 (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53). Genuine issues of material fact therefore preclude summary judgment on Morris's claim of breach of fiduciary duty. *Fed.R.Civ.P.* 56(c).

### b. Violation of terms of the Plan

 In Count III, Morris alleges that Winnebago violated the terms of the Plan by failing to allow him to make contributions for a fourth year, 1991, and by failing to allow him to leave his prior contributions in the Plan. In order to obtain relief under § 1132(a)(3), the terms of the applicable ERISA plan must have been violated. *Cooper Tire & Rubber Co. v. St. Paul Fire & Marine Ins. Co.,* 48 F.3d 365, 369–70 (8th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 300, 133 L.Ed.2d 205 (1995). Thus, to determine the validity of a claim of violation of the terms of the plan, the court "must look to the terms of the Plan itself." *Id.* at 370. An administrator's interpretation of the language of the Plan is reviewed under an "abuse of discretion" standard. *Id.* at 371 (citing *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989)); *Kennedy v. Georgia–Pacific Corp.,* 31 F.3d 606, 609 (8th Cir.1994). The Eighth Circuit Court of Appeals has identified five factors the court must examine

---

**10.** To make such a finding would be contrary to the disclaimer found in the Plan Information Booklet itself and rash in light of the complete inaccuracy of the Plan Information Booklet's explanation of the terms of Section 7.4 of the Plan Document.

in determining whether a Plan administrator's interpretation is an abuse of discretion: 1) whether the interpretation is consistent with the goals of the Plan; 2) whether it renders any language in the Plan meaningless or internally inconsistent; 3) whether it conflicts with the substantive or procedural requirements of the ERISA statute; 4) whether [the administrator] has interpreted the provision at issue consistently; and 5) whether the interpretation is contrary to the clear language of the Plan. *Finley v. Special Agents Mut. Benefit Ass'n*, 957 F.2d 617, 621 (8th Cir.1992). *Cooper Tire & Rubber Co.*, 48 F.3d at 371.

■ Some of the same genuine issues of material fact as described in the immediately preceding subsection preclude summary judgment on a portion of the present claim of violation of the terms of the Plan. Specifically, because there is no basis in the record for concluding that any terms of the Plan precluded Morris's further contributions, since no terms of the Plan have been offered or discovered that are comparable to the language in answer to question number 9 in the Plan Information Booklet, Winnebago is not entitled to summary judgment on this portion of the claim. *Reed*, 7 F.3d at 810; *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53). Furthermore, a genuine issue of material fact as to this portion of the claim is created by Morris's assertion that, notwithstanding the purported provision of the Plan forbidding contributions once he attained the age of 55, he was permitted to make one such contribution. This genuine issue of material fact goes to whether Winnebago has interpreted consistently the provision upon which it relies as demonstrating that its refusal of Morris's contributions was in compliance with the Plan. *Cooper Tire & Rubber Co.*, 48 F.3d at 371 (identifying this as one element in determining whether the terms of an ERISA plan have been violated). Thus, the existence of such a Plan provision and Winnebago's interpretation of such a provision if its exists are called into question, precluding summary judgment. *Fed.R.Civ.P.* 56(c).

■ However, the court finds that summary judgment is appropriate on one portion of Morris's claim of violation of the terms of the Plan. That portion is Morris's allegation that Winnebago violated the Plan by failing to allow him to leave his prior contributions in the Plan. The Plan Document, albeit belatedly made a part of the summary judgment record, does establish beyond dispute that Morris was entitled only to a return of his contributions plus interest. *Cooper Tire & Rubber Co.*, 48 F.3d at 369–70 (claim must be based on violation of terms of the applicable ERISA plan). One of the separate and sufficient conditions for a return of contributions upon termination as stated in Section 7.4(a)(ii) of the Plan Document is that the "Termination of Services occurs ... before the Participant completes 5 years of participation under the Plan." Plan Document, § 7.4, p. 7. It is undisputed that Morris did not have five full years of participation in the Plan at the time of his termination. Furthermore, as a matter of law, Section 7.4(a) is applicable to Morris's termination, notwithstanding his argument that the comparable language in the Plan Information Booklet is initially cast only in terms of a "voluntary" termination, not an involuntary one. The title of Section 7.4 refers not to "voluntary" termination, but to "Benefits Upon Early Retirement." Plan Document, § 7.4, p. 7. The language of the section refers only to "Participant's Termination of Services prior to the Normal Retirement Date," not to any specifically voluntary termination of employment by the employee. *Id.* The general applicability of the provision to any termination prior to normal retirement, including involuntary terminations, is clarified by the definition of "Termination of Services" in the Plan Document. That definition of "Termination of Services" is "the severance of the Participant's employment with the Employer or termination of the Participant's service on the Board, as the case may be." Plan Document, § 3.21, p. 3. This provision, by its unambiguous terms, refers to any severance or termination, not just to voluntary ones. Thus, as a matter of law, Morris was not entitled to leave his contributions in the Winnebago Deferred Compensation Plan upon his termination in January of 1991, and Winnebago is entitled to summary judgment on

Morris's claim of violation of the terms of the Plan by refusing to allow him to keep his contributions in the Plan.

## V. CONCLUSION

The court concludes that Winnebago is entitled to summary judgment on one portion of one claim, but that its summary judgment motion should be denied in all other respects. Winnebago is not entitled to summary judgment on Morris's claim of "interference" with ERISA rights, although it is a very close question. Courts agree that the burden-shifting analysis applicable to Title VII and ADEA claims is also applicable to "wrongful" or "discriminatory" discharge claims under ERISA. Although the circuit courts of appeals appear split on the nature of the third-stage inquiry in an ERISA case, whether "pretext-only" or "pretext-plus" is required, this court has applied the most recent clarification of the third-stage analysis applicable to Title VII or ADEA claims articulated by the Eighth Circuit Court of Appeals. Because the court finds that a weak *prima facie* case and evidence of pretext, admittedly relatively strong, but nonetheless equivocal as to whether it demonstrates that interference with ERISA benefits was the motivation for Morris's discharge, this case presents the kind of circumstances in which evidence beyond a showing of pretext is required. In assessing Morris's showing of evidence beyond pretext, the court has also been mindful of the cautions of the Eighth Circuit Court of Appeals that summary judgment in employment discrimination cases should seldom be granted. Although just barely, the court concludes, for the purposes of ruling on a summary judgment motion, the additional evidence Morris has presented creates a reasonable inference that entitlement to prospective ERISA benefits was a determinative factor in Winnebago's adverse employment decision. Therefore, owing to genuine issues of material fact and reasonable inferences arising from the record, summary judgment as to Count I is **denied.**

Although the question was not raised by the defendant, the court, aware that a federal court is a court of limited jurisdiction, has examined whether Morris has standing to assert his claims of breach of fiduciary duty and violation of the terms of the Plan, because he is a former employee who is no longer an active participant in the Plan. The court concludes that Morris's standing to assert the claims in Counts II and III is dependent upon his success on Count I, because only if he prevails on his wrongful discharge claim will he have standing to assert his other claims as a former employee with a reasonable expectation of returning to covered employment.

The "standing" issue aside, the court has considered Winnebago's motion for summary judgment as to Morris's remaining claims. An examination of the terms of the Plan Document, only belatedly provided to the court as a supplement to the summary judgment record, shows some of the relevant provisions to be undisputably at odds with the explanation of those provisions found in the Plan Information Booklet provided to employees, including Morris. The court finds that the disclosures of those terms made to Morris are misleading. However, whether such communications constituted affirmative, material misrepresentations are questions of fact, making summary judgment inappropriate. The court further finds that Winnebago has failed to establish that other provisions of the Plan Information Booklet upon which it relied as demonstrating no breach of fiduciary duty had no comparable provisions in the Plan Document. Thus, Winnebago had failed to establish a basis in the record for summary judgment in its favor as to that portion of the fiduciary duty claim. Genuine issues of material fact preclude summary judgment on Morris's claim of breach of fiduciary duty, and Winnebago's motion for summary judgment as to Count II is also **denied.**

As to Count III, alleging violation of the terms of the Plan, Winnebago's motion for summary judgment is **granted in part and denied in part.** The motion is *denied* as to that portion of the claim alleging violation of the Plan terms governing Morris's right to make further contributions to the Plan. Winnebago failed to establish that the terms upon which it relied were part of the undisputed record. Furthermore, Morris raised a

genuine issue of material fact as to the existence or interpretation of such terms, because Winnebago accepted his contributions for one year when, under Winnebago's present assertion of the terms of the Plan, such contributions would have been barred. Summary judgment is *granted,* however, as to that portion of the claim alleging that Morris was entitled to leave his contributions in the Plan and Winnebago refused to let him do so. In light of the undisputed fact that Morris had not participated in the Plan for five years at the time of his termination, and in light of the terms of the actual Plan Document, as a matter of law, Morris was not entitled to leave his contributions to the Plan upon his termination.

Winnebago's motion for summary judgment is therefore **granted in part and denied in part** as stated in this ruling.

**IT IS SO ORDERED.**