

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-2-1996

# Kowalski v. L&F Products

Precedential or Non-Precedential:

Docket 95-5101

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Kowalski v. L&F Products" (1996). *1996 Decisions.* Paper 167.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/167

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 95-5101

_____


TERESA KOWALSKI

Appellant,

vs.

L & F PRODUCTS

Appellee.


_____


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

(D.C. Civil No. 94-cv-00448)

_____


ARGUED DECEMBER 11, 1995

BEFORE:  BECKER, ROTH and LEWIS, Circuit Judges.

(Filed May 2, 1996)

_____

Timothy P. McKeown (ARGUED)
Schachter, Trombadore, Offen, Stanton & Pavics
45 East High Street
Post Office Box 520
Somerville, NJ  08876-2394

_____ Attorney for Appellant

1

Richard C. Cooper (ARGUED)
McCarter & English
100 Mulberry Street
Four Gateway Center
Newark, NJ  07101-0652

<u>          Attorney for Appellee</u>


———————————

OPINION OF THE COURT

———————————


LEWIS, <u>Circuit</u> <u>Judge</u>.

In this appeal, we must address the scope of § 510 of the Employment Retirement Income & Security Act ("ERISA") to determine whether appellant-employee Teresa Kowalski ("Kowalski") stands protected from her employer's alleged retaliatory discharge.  Kowalski argues that the district court incorrectly granted summary judgment in favor of appellee-employer L & F Products ("L & F").  Kowalski has alleged that L & F terminated her for exercising her right to receive certain disability benefits.

We hold that Kowalski has raised a cognizable cause of action under § 510 for retaliatory termination notwithstanding the fact that she had received her benefits prior to being terminated.  In addition, for the reasons set forth in section III of this opinion, we will vacate the district court's grant of summary judgment in favor of L & F.

I.

L & F employed Teresa Kowalski as a packaging operator from April 23, 1984 until January 29, 1993.  Kowalski's duties as

a packaging operator required her to spend the entirety of her eight and a half hour shift on her feet.  In June 1991, Kowalski informed L & F's company nurse that she had developed bunions on each foot.  On the advice of her doctor, Kowalski decided to undergo separate operations[1] to remove each bunion.  Between June 7, 1991 and October 21, 1991, Kowalski took a medical leave of absence for the first bunionectomy and received full medical benefits under L & F's Short Term Disability Plan (the "Plan").  Thereafter, Kowalski returned to work.  Almost a year later, she took another leave of absence for the second bunionectomy and again received full medical benefits under the Plan.

During Kowalski's second leave of absence, L & F's human resource manager, Rob King, hired a private investigator to determine whether Kowalski was actually disabled and entitled to the benefits she was receiving.  The investigator produced a report to King stating that Kowalski had been "clean[ing] professional offices" during her medical leave of absence.  App. at 74-75.  Relying on this report, L & F fired Kowalski on January 29, 1993.  App. at 74.

In his deposition, King testified that he relied heavily on the investigator's summary of written statements made by two "witnesses," Diane Laich and Dr. Lapkin, both of which suggested only that Kowalski had contracted to provide cleaning services during the period of her disability.  The investigator prepared a written synopsis of Laich's and Dr. Lapkin's

---

[1]    This operation is called a "bunionectomy."

4

statements, which summarily concluded that Kowalski was engaged in the performance of cleaning services during the period of her medical leave.

Neither Laich nor Dr. Lapkin testified or stated that they ever saw Kowalski performing cleaning services. Laich, in a certified statement to the district court, stated that Kowalski had contracted to provide cleaning services for a local church. App. at 50. Laich also stated that she was aware that Kowalski's son and another woman were providing cleaning services at the church. King admitted that he never compared the investigator's synopsis of Laich's and Dr. Lapkin's written statements to their actual statements prior to terminating Kowalski. App. at 73-75.

Despite his own testimony that it is important to consider an employee's version of events before deciding to terminate that employee, King refused to consider Kowalski's responses to the investigator's conclusions. In particular, Kowalski had informed King that she owned a cleaning service, but did not engage in providing cleaning services herself during the period of her disability.[2] Nevertheless, King did not allow Kowalski the opportunity to provide any evidence to support her claim.

Kowalski filed this lawsuit alleging that her discharge violated § 510 of ERISA. The district court granted L & F's motion for summary judgment on the grounds that (1) Kowalski

---

[2] King testified that it is not against L & F company policy for an employee who owns his or her own business to receive disability payments. App. at 77.

failed to show that L & F's legitimate nondiscriminatory reason for termination was pretextual; and (2) Kowalski failed to offer any evidence of L & F's intention to retaliate against her for exercising her right to medical leave benefits.

## II.

As a threshold matter, we must determine whether Kowalski, as a plaintiff suing under § 510 of ERISA, has a cognizable cause of action notwithstanding the fact that she received her ERISA-protected benefits from her employer prior to termination. Our review of this issue of law is plenary. Gavalik v. Continental Can Co., 812 F.2d 834, 850 (3d Cir. 1987).

> Section 510 of ERISA provides that:
> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

29 U.S.C. § 1140.

Thus, the plain language of § 510 provides a cause of action for employees who have been discharged "for exercising any right" to which employees are entitled to under an ERISA-protected benefit plan. But section 510 also goes further, protecting employees from interference with the "attainment of any right to which [the employees] may become entitled." We have recognized that Congress enacted § 510 primarily to prevent employers from discharging or harassing their employees in order

6

to keep them from obtaining ERISA-protected benefits. <u>Gavalik</u>, 812 F.2d at 851.

L & F argues that, because Kowalski had received all of her benefits prior to termination, her claim must fail. In particular, L & F argues that Congress enacted § 510 to prevent companies from avoiding their ERISA obligations and that a plaintiff who has received the benefits flowing from an employer's ERISA obligations is not entitled to protection under the statute.

Although few courts have addressed whether a plaintiff-employee has a cognizable ERISA cause of action where the plaintiff received his or her ERISA-protected benefits prior to termination, at least one Court of Appeals has indicated a willingness to recognize such a cause of action. In <u>Kimbro v. Atlantic Richfield Co.</u>, 889 F.2d 869 (9th Cir. 1989), the plaintiff claimed that he was unlawfully discharged because he had used his sick leave benefits. The Ninth Circuit ultimately determined that the plaintiff in <u>Kimbro</u> failed to establish a <u>prima</u> <u>facie</u> case; however, it also recognized a potential cause of action for "unfair reprisal for use of ERISA-protected benefits." <u>Id</u>. at 881; <u>see</u> <u>also</u> <u>Bailey v. Policy Management Systems Corp.</u>, 814 F. Supp. 37, 39 (N.D. Ill. 1992) (recognizing that a plaintiff who alleged that she was terminated for submitting approximately $40,000 in claims to her employer stated a claim under § 510 of ERISA).

7

Given the peculiar factual posture of this case and others like it, the dearth of case law directly on point is understandable.  The district court recognized that:

> It seems anomalous for an employer to pay all the benefits due an employee and then immediately terminate the employment relationship.  Once an employer has made the investment in its employee by providing medical disability benefits, it seems only logical that the employer would hope the employee would return to work.  To terminate an employee days _after_ receiving _full_ benefits is illogical (emphasis in original).

Dist. Ct. Op. at 12.  Nonetheless, whether it is or is not logical for an employer to act a particular way is largely irrelevant for purposes of discerning whether Congress intended to protect employees from that particular type of employer behavior.

It is hard to imagine any rational construction of the "for exercising any right" language in § 510 that would indicate that Congress intended that the protections provided to employees by § 510 would not extend to the type of retaliatory discharge that is alleged in this case.  There is simply no limiting language in § 510 that suggests that only future benefits are protected.  We are bound to recognize and effectuate Congress' intent where it is clear from the language of a statute.  See Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253-54 (1992) (courts must presume that "a legislature says in a statute what it means and means in a statute what it says there"); Moskal v. United States, 498 U.S. 103, 109-110 (1990) (courts have a duty

8

to "give effect, if possible, to every clause and word of a statute").

At oral argument, counsel for L & F argued that the "to which he is entitled" language that follows "for exercising any right" in § 510 is the limiting language which supports the company's suggested reading of § 510. This argument ignores the plain language of § 510, and implies that Congress intended "to which he is entitled" to actually mean only "to which he is entitled to receive in the future." If we were to read § 510 in this manner, it would render the remainder of the section, which prohibits employer interference "with the attainment of any right to which [the employee] may become entitled under the plan[]," superfluous. The Supreme Court has commented that its cases "express a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment." Pa. Department of Public Welfare v. Davenport, 495 U.S. 552, 562 (1990). We, of course, share this reluctance and reject L & F's suggested reading of § 510.

If we were to accept L & F's assertion that § 510 only protects individuals with an expectation of future benefits, employers would be free to pay ERISA benefits to an employee and then discharge the employee for having exercised his or her rights to the benefits. L & F's suggested reading of § 510 would allow an employer to force an employee to choose between losing his or her job for exercising his or her right to ERISA-protected benefits or keeping his or her job by forgoing his or her right to the benefits, a quintessential Hobson's choice. Reading § 510

to permit this type of behavior by employers would likely result in many employees forgoing their rights to ERISA-protected benefits, which, in turn, would frustrate the purposes behind Congress' enactment of ERISA.

It may be true that, in practice, few employers would terminate an employee after paying the employee his or her ERISA-protected benefits. But it is not hard to imagine several situations in which an employer would have a motivation to embark upon such a course of action. For example, an employer might decide to terminate an employee for exercising rights to ERISA-protected benefits, after having paid the benefits, to deter other employees from exercising their rights to similar benefits. Likewise, an employer who had been searching for a reason to terminate a particular employee might be motivated to pay the benefits to the employee before termination to camouflage a pretextual firing. On a less vindictive level, an employer may, for reasons of oversight or laziness, simply not get around to terminating an employee until after paying the benefits. We recognize that employees facing these types of situations are no less vulnerable than those who are terminated without receiving their ERISA-protected benefits, and therefore conclude that § 510 protects employees from being terminated for exercising rights to ERISA-protected benefits regardless of whether they have received such benefits prior to termination.

Accordingly, we hold that § 510 of ERISA can provide an employee with a cause of action to challenge an employer's termination when the termination has allegedly occurred in

10

retaliation for the employee exercising his or her right to receive ERISA-protected benefits.

## III.

Our review of the district court's granting of L & F's motion for summary judgment is plenary. Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). To determine whether the district court properly granted summary judgment, we use the same standards employed by the district court. Jefferson Bank v. Progressive Casualty Insurance Co., 965 F.2d 1274, 1278 (3d Cir. 1992). Rule 56(c) sets forth the standard for summary judgment, providing that summary judgment shall be granted only if there exists "no genuine issue of material fact." Thus, a factual issue must be both material and genuine in order to defeat a motion for summary judgment. To be material, the factual dispute must be one that might "affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Of course, in making our determination of whether the district court properly granted summary judgment, we must draw all reasonable inferences in favor of the non-movant. Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983).

A.    Burdens of Proof

We have held that the presumptions and shifting burdens of production used in employment discrimination cases are equally applicable in the context of discriminatory discharge cases brought under § 510 of ERISA.  Turner v. Schering-Plough Corp., 901 F.2d 335, 346 (3d Cir. 1990).  The evidentiary playing field for discrimination cases has been drawn clearly by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and its progeny.  Accordingly, a plaintiff must first establish a prima facie case of a discriminatory discharge.  If the plaintiff satisfies this requirement, the defendant must articulate a legitimate, non-discriminatory reason for the discharge.  To survive summary judgment when the defendant articulates a legitimate, non-discriminatory reason for the discharge, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an individual's discriminatory reason was more likely than not reason for the discharge.  Fuentes, 32 F.3d at 764 (citing St. Mary's Honor Center v. Hicks, 113 S. Ct. 2742, 2749 (1993)).

B.    L & F's Proffered Non-Discriminatory Reason for the Discharge

The district court found that Kowalski established a prima facie case of unlawful termination under ERISA, and L & F does not dispute this finding.  To dispel the inference of a retaliatory discharge, L & F must articulate a legitimate, non-discriminatory reason for discharging Kowalski.  We have

12

characterized this burden as "relatively light."  Fuentes v.
Perskie, 32 F.3d 759, 763 (3d Cir. 1994).  L & F can satisfy this
burden of production by introducing evidence which, taken as
true, would permit the conclusion that there was a non-
discriminatory reason for the discharge.  Id. at 763.

The district court correctly concluded that the record
supports L & F's assertion that it discharged Kowalski because it
believed that she had acted fraudulently in procuring and/or
prolonging her disability leave.  It is clear from the record
that L & F's human resource manager, Rob King, relied on a
private investigator's report that stated that Kowalski had been
working full-time while on medical disability leave.  L & F has
articulated that its actions were motivated by its discovery of
Kowalski's alleged fraud.  L & F's proffer of this legitimate,
non-discriminatory reason for terminating Kowalski satisfies the
"light" burden we have set forth in Fuentes.

C.    Kowalski's Evidence of Pretext

Given that L & F was able to proffer a legitimate non-
discriminatory reason for terminating Kowalski, to avoid summary
judgment, Kowalski must point to evidence from which the court
could reasonably infer that L & F's proffered reasons were
fabricated (i.e., pretextual).  Fuentes, 32 F.3d at 764.  We
noted that meeting this burden requires the plaintiff to put
forth evidence demonstrating that the employer's proffered non-
discriminatory reason "was either a post hoc fabrication or
otherwise did not actually motivate the employment action (that
is, the proffered reason is a pretext)."  Id.

13

At a minimum, Kowalski must put forward enough evidence to create a genuine issue of material fact as to whether L & F's proffered reasons for the discharge were pretextual. To do this, Kowalski must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." Id. at 765.

The district court held that "there is nothing [in the record that] creates a genuine issue of fact that defendant's reason for terminating plaintiff is pretextual." Dist. Ct. Op. at 10. The court correctly observed that, "even if defendant wrongly believed plaintiff acted fraudulently in procuring her disability leave, if defendant acted upon such a belief it cannot be held guilty of retaliatory discharge." Id. at 11. The district court concluded that "[p]laintiff has offered no evidence to suggest that defendant acted in bad faith when relying upon the investigator's report." Id.

Kowalski argues that the evidence contradicts the defendant's proffered reason and demonstrates the existence of material issues of fact as to the defendant's good faith in relying on the results of the investigation to conclude that Kowalski was working while on disability. We agree. The district court was too quick to conclude that the accuracy of the private investigator's report was irrelevant. The facial accuracy and reliability of the report is probative of whether

14

L & F acted in good faith reliance upon the report's conclusions: the less reliable the report may appear, the greater the likelihood that King's reliance on it to justify his actions was pretextual.

A review of the circumstances surrounding the preparation of the investigator's report reveals that King should have cast a wary eye toward its factual conclusions. The investigator never observed Kowalski working at her "full-time cleaning job," despite the fact that he conducted three days of surveillance. In addition, the report only contained the investigator's summary of two witnesses' statements and not the witnesses' actual statements. The investigator's report also indicated that Kowalski had actually performed cleaning services while on medical leave, despite the fact that neither of the witnesses stated that they actually saw Kowalski perform the services.

Though not determinative, it is also relevant that L & F never offered the report into evidence. If the report itself justified King's good faith reliance, presumably L & F would have attached it to its summary judgment motion. In fact, in its brief, L & F states "[p]erhaps the report was inaccurate; nevertheless, it was the basis for the adverse action as the decision maker took it to be accurate." L & F Br. at 16. Given that L & F's termination of Kowalski was admittedly based entirely on the report, the facial reliability of the report is relevant to determining whether King, L & F's human resource

15

manager, actually relied in good faith upon the report's conclusions in terminating Kowalski.

Kowalski offers other facts to suggest that L & F's reliance on the conclusions of the report was pretextual, and that she was actually fired for exercising her right to the disability benefits. Kowalski argues that the timing of her discharge (which occurred shortly after she had taken her second leave of absence) indicates that she was discharged for having taken two periods of disability instead of one. In addition, Kowalski claims that L & F had no basis to investigate her because she had not been on leave longer than is normal for a bunionectomy. She also points out that L & F previously had no practice of investigating employees who were on disability for long periods of time. It is also significant that King's reasons for procuring the investigator's report have changed over the course of this litigation. As noted, initially he indicated that he began investigating Kowalski because she had been out of work longer than normal for a bunionectomy. App. at 60. At a later point, King indicated that he ordered the investigation because he had received a tip that the plaintiff was working while on disability. App. at 62. Although these facts far from establish that L & F's proffered reason for discharging Kowalski was pretextual, when viewed alongside the very serious questions regarding the reliability of the investigator's report, they do raise a genuine issue of material fact regarding whether L & F's proffered reason for terminating Kowalski was pretextual.

16

As such, we will vacate the district court's order granting summary judgment in favor of L & F, and remand the case to the district court. Upon remand, we suggest that the district court order the production of the investigator's report. In doing so, we emphasize that the ambiguities surrounding the report's conclusions indicate that a finding that L & F relied in good faith on the report, without having the report itself in evidence, is inappropriate in this case at the summary judgment stage. We do not hold, however, that a defendant must always put an investigative report (or another piece of evidence) upon which he or she relies into the record. We simply hold that in this case, where the contents of the primary piece of evidence upon which the defendant relies is contradicted by witness testimony and is not even introduced, summary judgment is inappropriate.

D. Kowalski's Evidence of Intent

As an alternative basis for granting summary judgment in favor of L & F, the district court determined that Kowalski failed to offer any evidence of L & F's specific intent to violate ERISA. Kowalski argues that there were sufficient facts available to the district court for it to reasonably infer that L & F acted with a discriminatory intent. We agree. We note that in this case, we need not and do not determine whether specific intent is an essential element of a § 510 cause of action because, whether or not such intent is required, there was sufficient evidence in the record to satisfy the essential elements of § 510.

17

The same facts Kowalski offered to show that L & F's proffered non-discriminatory reason for terminating her was pretextual can be used to infer L & F's specific intent to violate ERISA. In St. Mary's Honor Center v. Hicks, the Supreme Court commented that "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if [the] disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." 113 S. Ct. at 2749. Indeed, we have similarly held that, "if the plaintiff has pointed to evidence sufficient to discredit the defendant's proffered reasons, to survive summary judgment plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case." Fuentes, 32 F.3d at 784. Under this standard, Kowalski has offered enough evidence, which we specified in section III-C of this opinion, to survive summary judgment on the issue of whether L & F's actions demonstrated a specific intent to violate § 510 of ERISA.

As such, we cannot sustain the district court's conclusion that Kowalski has offered no evidence of L & F's specific intent to violation § 510 of ERISA.

18

IV.

In sum, we hold that Kowalski, as an employee who claims to have been terminated by her employer for having exercised her right to disability benefits arising out of her two bunionectomies, raised a cognizable claim under § 510 of ERISA notwithstanding the fact that she received the benefits from her employer prior to termination.  We vacate the judgment of the district court on the basis that Kowalski presented enough evidence to suggest that material issues of fact exist as to whether L & F's reliance on the investigator's report was pretextual.  Based on the evidence in the record before us (and in part on what evidence is not before us, i.e., the report), Kowalski has successfully stood her ground against L & F's motion for summary judgment.