**COUNCIL OF ALTERNATIVE POLITICAL PARTIES, Green Party of New Jersey, Natural Law Party, NJ Conservative Party, New Jersey Libertarian Party, U.S. Taxpayers Party of New Jersey, Albert Larontonda, Gary Novosielski, Madelyn Hoffman, Jim Mohn, Mary Jo Christian, Jeffrey M. Levine, Tom Blomquist, Bernard Sobolewski, Sal Duscio, Anne Stommel, Leonard Flynn, John Paff, Michael Buoncristiano, Emerson Ellett, Charles Novins, and Lowell T. Patterson, Eugene R. Christian, Scott Jones, Richard S. Hester, Sr., Barbara Hester, Austin S. Lett, Arnold Kokans, Leina Levone, Shirley Boncheff, Christian Zegler, Victoria Spruiell, and Harley Tyler, Plaintiffs,**

v.

**Lonna R. HOOKS, Secretary of State of the State of New Jersey, in her official capacity, and her successors, Defendant.**

No. Civ.A. 97–1966(MLC).

United States District Court, D. New Jersey.

April 8, 1998.

Leonora M. Lapidus, David R. Rocah, American Civil Liberties Union of New Jersey, Newark, NJ, for Plaintiffs.

Peter Verniero, Attorney General of New Jersey, Jeffrey J. Miller, Asst. Atty. Gen., Donna Kelly, Senior Deputy Atty. Gen., Trenton, NJ, for Defendant.

## OPINION

COOPER, District Judge.

This matter is before the Court on plaintiffs' motion for summary judgment. For the following reasons, the motion is granted.

## PROCEDURAL HISTORY

Plaintiffs are New Jersey alternative political parties,[1] candidates for elected state office and voters. They bring this ballot access action, pursuant to 42 U.S.C. § 1983, challenging N.J.Stat.Ann. § 19:13–9,[2] which establishes the statutory deadline for filing the petitions necessary to secure a place on the November general election ballot. The issue in this case is whether this timing requirement constitutes an unconstitutional burden on independent candidate access to the general election ballot.

Plaintiffs moved for a preliminary injunction on May 9, 1997, seeking to enjoin the Secretary of State of New Jersey from refusing to accept nominating petitions filed after the statutory deadline, and further enjoining her from refusing to consider any signatures gathered and submitted after the statutory deadline in determining whether the candidate had submitted a sufficient number of signatures to obtain a place on the ballot for the general election. This Court denied plaintiffs' motion on June 17, 1997. In denying plaintiffs' application, we found that plaintiffs were likely to succeed on the merits of their claim and that plaintiffs would suffer irreparable injury without a preliminary injunction. (Mem. & Order June 17, 1997 at 20.) However, we denied the preliminary injunction on the grounds that preliminary injunctive relief would be disruptive to the 1997 electoral process and thus the balance of the equities and the public interest militated against such relief. (*Id.*) The Court of Appeals for the Third Circuit reversed, finding that all four preliminary injunction factors favored granting plaintiffs preliminary relief. *Council of Alternative Political Parties v. Hooks,* 121 F.3d 876, 884 (3d Cir.1997) (hereinafter "CAPP").

Plaintiffs now move for summary judgment, pursuant to Federal Rule of Civil Procedure 56, seeking to have N.J.Stat.Ann. § 19:13–9 declared unconstitutional and a permanent injunction issued against its enforcement. Defendant opposes the motion.

## BACKGROUND[3]

In New Jersey, the general election for all partisan statewide and local offices takes place on the Tuesday next after the first Monday in November. N.J.Stat.Ann. §§ 19:2–3, 19:3–2. Primary elections for the New Jersey general election are held on the Tuesday next after the first Monday in June. N.J.Stat.Ann. § 19:2–1. New Jersey's election laws provide two mutually exclusive ways for a candidate to secure a spot on the November ballot for the general election. First, a candidate may seek the nomination at the June primary election from one of the two recognized political parties in New Jersey, i.e., the Republican and Democratic parties [hereinafter referred to as the "primary election process"].[4] To be placed on the ballot in the primary election "for candidates

1. Plaintiff Council of Alternative Political Parties ("CAPP") is an unincorporated association located in Little Ferry, New Jersey, and represents five alternative political parties holding widely divergent political platforms and viewpoints. CAPP's membership consists of the Green Party of New Jersey, the Natural Law Party, the NJ Conservative Party, the New Jersey Libertarian Party, and the U.S. Taxpayers Party of New Jersey. (Compl.¶ 6.)

2. The statute provides in part:
   All such petitions and acceptances thereof shall be filed with the officer or officers to whom they addressed before 4:00 p.m. of the 54th day next preceding the day of the holding of the primary election for the general election in this Title provided. All petitions when filed shall be open under proper regulations for public inspection.
   Notwithstanding the above provision, all petitions and acceptances thereof nominating electors of candidates for President and Vice

President of the United States, which candidates have not been nominated at a convention of a political party as defined by this Title, shall be filed with the Secretary of State before 4:00 p.m. of the 99th day preceding the general election in this Title provided. All petitions when filed shall be opened under proper regulations for public inspection.
N.J.Stat.Ann. § 19:13–9.

3. The facts of this case were fully set forth in the Court's June 17, 1997 Memorandum and Order and are repeated here in part for clarity.

4. A political group obtains political party status, and therefore is included in the primary election ballot, provided it garners at least 10% of the votes cast in the prior general election for the office of member of the General Assembly. N.J.Stat.Ann. § 19:5–1.

to be voted for by the voters of a political party throughout the entire State,"[5] a candidate must file a nominating petition with 1,000 signatures of registered voters belonging to his or her respective political party. N.J.Stat.Ann. § 19:23–8. In the case of candidates to be voted for by the voters of a political party throughout a congressional district, 200 signatures are needed; 100 signatures are required in the case of candidates for the Senate and General Assembly. *Id.* If the candidate is successful at the primary election, his or her name then appears on the general election ballot as the nominee of the political party.

Alternatively, New Jersey allows a candidate to bypass the primary election process and instead seek direct access to the general election ballot via a petition process [hereinafter referred to as the "independent candidate process"]. N.J.Stat.Ann. § 19:13–9. This is also the required avenue for alternative political party candidates (i.e., those parties that have not garnered sufficient support in the previous election to be recognized as a political party under N.J.Stat.Ann. § 19:5–1), and is the process challenged here. *Id.* The independent candidate process requires that candidates for "an office to be filled by the voters of the entire State" collect 800 signatures to be placed on the ballot. N.J.Stat. Ann. § 19:13–5. Candidates for all other partisan state offices must collect no more than 100 signatures. *Id.*

All candidates, regardless of whether they seek elected office through the primary election process or through the independent candidate process, must file their nominating petitions with the Secretary of State of New Jersey 54 days before the primary election. *See* N.J.Stat.Ann. §§ 19:23–14 (primary election process); 19:13–9 (independent candidate process). However, notwithstanding the above provisions, all candidates for President and Vice President of the United States have a substantially different deadline: they must file their nominating petitions 99 days before the *general* election. N.J.Stat.Ann. § 19:13–9.

Once the nominating petitions have been filed, objections thereto may be filed based on, *inter alia,* claims that the signatories are not registered voters or that the signatures are fraudulent. N.J.Stat.Ann. § 19:13–10. Objections must be filed with the appropriate election official within four days after the last day for filing petitions. *Id.* The election official must act on any objections by the 48th day before the primary election for all candidates except those for President and Vice President; for these two offices, the Secretary of State must file his or her determination by the 93rd day before the general election. N.J.Stat.Ann. § 19:13–11. No later than 86 days prior to the general election, the Secretary of State must certify to the county clerks the names of all of the candidates nominated by both the primary election process and the independent candidate process. N.J.Stat.Ann. § 19:13–22. The county clerks, in turn, must have the contents of the official ballots ready for the printer no later than the 43rd day prior to the general election. N.J.Stat.Ann. § 19:14–1.

### *DISCUSSION*

Federal Rule of Civil Procedure 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial. *Id.* at 324. "By its very terms, the standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty*

---

**5.** Positions filled through statewide elections include Governor of the State of New Jersey, *see* N.J. Const. art. IV, § 1 ¶ 4, and United States Senator. U.S. Const. amend. XVII.

*Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are only those facts that might affect the outcome of the action under governing law. *Id.* at 248; *Boyd v. Ford Motor Co.,* 948 F.2d 283, 285 (6th Cir.1991).

Moreover, the role of the judge at the summary judgment stage is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249. "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citation omitted).

■ Here, this Court, as well as the Court of Appeals for the Third Circuit, found that the instant challenge is controlled by *Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). *CAPP,* 121 F.3d at 879. The balancing test announced in *Anderson* directs that a court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights. *Anderson,* 460 U.S. at 789. In applying this test, our Court of Appeals held that defendant

advanced no state interests which in any way justify requiring plaintiffs to file their nominating petitions at the same early date as Democratic and Republican candidates. Thus, in applying the *Anderson* balancing analysis, we find nothing to weigh on the Secretary's side.

*CAPP,* 121 F.3d at 881. In coming to this conclusion, the court rejected defendant's three counter arguments that: (1) *Anderson's* applicability is limited to national elections; (2) the overall burden imposed by the state's ballot access scheme is small; and (3) imposing a filing deadline for alternative political party candidates different than the deadline imposed for major party candidates involves the state treating some candidates more favorably than others. *Id.* at 882–83.

■ In opposition to the instant summary judgment motion, defendant points to no material facts in dispute.[6] Rather, defendant argues that

[w]hile recognizing the relevance of *Anderson,* the State, nevertheless, continues to maintain that the issue of the constitutionality of New Jersey's filing deadline for independent candidates for all state and local public elective offices should be generally considered within the broader context of those United States Supreme Court decisions regarding state ballot access restrictions, which were rendered before and after *Anderson.*

(Def.'s Br. in Opp'n at 16.) Defendant urges this Court to consider the constitutionality of

---

**6.** Defendant argues that the "empirical record" outlined in the certification of Joseph F. Britt raises an issue of fact warranting denial of plaintiffs' motion. (Def.'s Br. in Opp'n at 31.) We disagree. Britt states that several alternative political party candidates have successfully filed petitions and gained a place on the ballot. (Britt Certif. ¶ 15.) Defendant argues that this demonstrates that the early filing deadline is not unduly burdensome. The Court of Appeals specifically rejected this argument, noting that in *Anderson,* five independent candidates qualified for Ohio's 1980 presidential ballot. *CAPP,* 121 F.3d at 882 ("Neither there [in *Anderson*] nor here can the fact that numerous candidates are able to overcome a burden on ballot access prevent a conclusion of unconstitutionality where that burden is not sufficiently justified by legitimate state interests.").

Defendant also attempts to create an issue of disputed fact by relying on the relatively low number of signatures required to gain a place on the ballot. (*See* Def.'s Br. in Opp'n at 33–34.) This argument was also rejected by the Court of Appeals. *CAPP,* 121 F.3d at 881 n. 5 ("While relatively low signature requirements do lessen the burden on candidates ... they do nothing to reduce the burden that an early filing deadline places on voters who wish to react to events occurring after the deadline."). Thus, defendant has failed to create a genuine issue of material fact. *See Kowalski v. L & F Prods.,* 82 F.3d 1283, 1288 (3d Cir.1996) (stating that a factual issue must be both material and genuine in order to defeat a motion for summary judgment, and that to be material, the factual dispute must be one that might affect the outcome of the suit under governing law).

N.J.Stat.Ann. § 19:13–9, as did the dissent in *CAPP*, "within the context of the more recent pronouncements of the United States Supreme Court." (*Id.* at 40.) The majority in *CAPP*, however, found *Anderson* controlling. *CAPP*, 121 F.3d at 879. Defendant's purely legal argument that the *Anderson* test should not be applied to the facts at hand does not create a genuine issue of material fact. *See Celotex*, 477 U.S. at 324. Accordingly, defendant has failed to carry her burden in the face of plaintiffs' properly supported summary judgment motion. *See id.* Plaintiffs' motion will therefore be granted.

An appropriate Order accompanies this Opinion.