NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4201
_____

TONY JACKSON,
                    Appellant

v.

PLANCO
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 08-cv-05144
(Honorable Stewart Dalzell)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 10, 2011
Before: SCIRICA, BARRY and VANASKIE, *Circuit Judges*.

(Filed: June 14, 2011)
_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

Tony Jackson appeals the grant of summary judgment in favor of his former

employer, PLANCO Financial Services, L.L.C. (PLANCO), in a discrimination and

retaliation suit brought under the Americans with Disabilities Act (ADA), 42 U.S.C. §

12101 *et seq.*,  the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*,

1

and the Pennsylvania Human Relations Act (PHRA), 43 Pa. Cons. Stat. § 951 *et seq.* We will affirm.

## I.[1]

PLANCO, a subsidiary of The Hartford, hired Tony Jackson on a temporary basis in September, 2004. In December, 2004, PLANCO hired Jackson full-time to administer Lotus Notes, an electronic mail system. Throughout Jackson's employment at PLANCO, the company had an internet policy forbidding access to inappropriate internet websites. The company also blocked employee access to certain sites using a filter.

In January, 2006, Jackson suffered a heart attack and two strokes. He took a medical leave, began working from home, and eventually returned to work full-time. Jackson took another short leave in September, 2006, while suffering from gout.

PLANCO began to question Jackson's work performance. On October 9, 2006, Jackson's supervisor, Christie Vazquez, and the department head, Steven Olshevski, met with Jackson to address his work performance, which they perceived as substandard. Jackson received negative performance reviews in November, 2006, and January, 2007. Throughout the performance evaluation process—referred to by the parties as "performance management"—Jackson repeatedly contested his supervisors' evaluations and contended he was doing adequate work.

---

[1] Because we review a grant of summary judgment, we recite the facts most favorable to the non-moving party, and draw all reasonable inferences from the evidence in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

On March, 22, 2007, Jackson complained to human resources he felt he was being singled out for review because of his disability. Specifically, he contended Olshevski found fault with his work, and failed to provide guidance to help him improve. He also contended Olshevski assigned him work on several occasions as he was departing the office for medical appointments.

Through its human resources department, PLANCO investigated the allegations. During the investigation process, Vazquez and Olshevski were instructed to cease "performance managing" Jackson. The investigation found no basis for Jackson's discrimination allegations, and also found adequate documentation that Jackson's performance was substandard. Human resources reported the results of the investigation to Jackson on April 30, 2007. At that time, Jackson was offered a lower paying position with fewer responsibilities—a position PLANCO describes as a demotion. Jackson declined the position in a manner that made the human resources representative believe Jackson was angry and "disgusted."

The next day, Jackson learned PLANCO's internet filter was broken and visited several websites routinely blocked by the filter, among them the Playboy website and several gun websites. Vazquez, who was aware Jackson owned guns and frequently engaged in target shooting, and who, as Jackson's supervisor, knew he was upset and angry, noticed Jackson viewing the gun websites. She testified she became afraid of Jackson, and decided not to deliver several negative performance memoranda she had prepared to give him.

On May 2, 2007, Vazquez informed human resources she was afraid for herself and for Olshevski. Human resources requested an internet usage report, which confirmed Jackson had accessed gun websites. Vazquez's complaint and the internet evidence was presented to Kevin Connor, the Executive Vice President of PLANCO. Connor was informed Jackson's performance was subpar, he was being unsuccessfully "performance managed," was upset about the process, had rejected an offer for a different position with PLANCO, and in light of this, his visiting gun websites created fear on the part of other employees for their safety.

Connor, on behalf of PLANCO, placed Jackson on leave, disabled his workplace access, and arranged for police officers to be present at PLANCO the next day. Vazquez and Olshevski were notified they were not required to come to work that day.

When Olshevski was informed, he too became concerned for his safety and warned his children to stay away from Jackson. Vazquez and Olshevski expressed their fear to human resources. Vazquez noted Jackson knew where she lived. In response, human resources telephoned Jackson and inquired about the incident. Jackson admitted he knew the filtering system was disabled and visited the gun websites. He also said he owned guns.

Human resources, determining employees were afraid of Jackson (especially in the wake of the then-recent Virginia Tech shootings), approached Connor with two courses of action: warn Jackson or terminate his employment. The human resources representative recommended termination, believing the reported employee fears were

4

legitimate. Connor elected to terminate Jackson's employment based on his accessing blocked internet sites and the resulting safety concerns. Jackson was terminated on May 8, 2007. PLANCO subsequently arranged for a police detail to be present at the workplace for three to four weeks.

Jackson filed his complaint on October 29, 2008, alleging discrimination in violation of the ADA and retaliation for exercising his rights under the ADA and the FMLA.[2] In his complaint, Jackson specifically alleged Olshevski discriminated against him. PLANCO moved for summary judgment after the close of discovery.

The District Court granted PLANCO's motion and dismissed all of Jackson's claims on September 29, 2009, holding PLANCO had articulated a legitimate, non-discriminatory reason for the termination, and Jackson had not met his burden of establishing the termination was a pretext.

Jackson timely appealed.

## II.[3]

---

[2] Jackson also brought claims under the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951 *et seq.* We "generally interpret the PHRA in accord with its federal counterparts." *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996). Thus we limit our discussion to the federal claims with which the PHRA claims are coextensive.

[3] We have jurisdiction under 28 U.S.C. § 1291. Our review of a district court's grant of summary judgment is plenary. *Carrasca v. Pomeroy*, 313 F.3d 828, 832-33 (3d Cir. 2002). We apply the same standard the District Court should have applied initially. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir. 1987) (en banc), *abrogated on other grounds as recognized in Seman v. Coplay Cement*, 26 F.3d 428, 438 n.13 (3d Cir. 1994). Accordingly, summary judgment is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where, as here, "the nonmovant will bear the burden of

We apply the familiar burden-shifting framework to Jackson's claims. The plaintiff "must carry the initial burden under the statute of establishing a prima facie case of . . . discrimination." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If it does so, "the burden of production shifts to the defendant to 'articulate some legitimate, nondiscriminatory reason for the [adverse employment action].'" *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (quoting *McDonnell Douglas*, 411 U.S. at 802). "Once the employer answers its relatively light burden . . . the burden of production rebounds to the plaintiff, who must now show . . . the employer's explanation is pretextual." *Id.*

On appeal, Jackson only contests the third prong of the burden-shifting analysis—whether he has met his burden of demonstrating PLANCO's non-discriminatory reasons for terminating his employment were a pretext for discrimination or retaliation.[4]

---

persuasion at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record . . . would be insufficient to carry the nonmovant's burden of proof at trial." *Chipollini*, 814 F.2d at 896.

[4] We note that although PLANCO appears to have conceded a prima facie case of discrimination before the District Court, it did not concede a prima facie case of retaliation. The court assumed without deciding that Jackson had made out a prima facie case of retaliation, and ultimately dismissed the claim because Jackson did not adequately demonstrate pretext. On appeal, Jackson briefs the discrimination and retaliation claims together, focusing exclusively on the pretext element of the claim and not otherwise distinguishing between the two claims. *See* Pl.'s Br. at 28-42. PLANCO, in turn, does not press its argument that Jackson has failed to make out a prima facie case of retaliation and instead centers its argument on the contention that Jackson waived the retaliation claim, or in the alternative, that its arguments denying pretext apply equally to the retaliation claim. We do not think that Jackson has waived the retaliation claim in its entirety, but we do note Jackson has waived any issues surrounding the timing of his termination because they are not briefed on appeal. *See Laborers' Int'l Union v. Foster*

6

PLANCO stated its actions were predicated on Jackson's visiting blocked websites in derogation of its internet policy, and on employees' safety concerns within the context of his shooting hobby, gun ownership, and visiting of gun websites from the workplace.[5]

We have explained that, at the summary judgment stage, a plaintiff must point to direct or circumstantial evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764.

The second element—an analysis based on the "natural probative force of the evidence," *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1111 (3d Cir. 1997)—is not at issue here. The parties focus exclusively on whether Jackson has adduced sufficient evidence demonstrating a factfinder could reasonably disbelieve PLANCO's reasons for Jackson's discharge. Under this analysis, "the plaintiff cannot simply show that the employer's decision was wrong or mistaken . . . . Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence . . . ." *Fuentes*, 32 F.3d at 765 (internal quotations omitted). This heightened level of

---

*Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994). Accordingly, we will address together the discrimination and retaliation claims briefed by the parties, focusing on the pretext element of the claims.

[5] Jackson appears to have conceded these reasons are legitimate and non-discriminatory.

specificity, *Simpson v. Kay Jewelers*, 142 F.3d 639, 646 (3d Cir. 1998), "places a difficult burden on the plaintiff ," *Fuentes*, 32 F.3d at 765.

The admissible evidence Jackson highlights would be insufficient to carry his burden at trial. *See Chipollini*, 814 F.2d at 896. Jackson admitted in his deposition that his personal belief that Olshevski was motivated to terminate him because of his disability was the primary support for his claim. *See Jackson v. PLANCO*, 660 F. Supp. 2d. 562, 580 (E.D. Pa. 2009). He points to no circumstantial evidence of discrimination or retaliation. Instead, to demonstrate pretext, Jackson's arguments reduce to the contention that Vazquez and Olshevski either were not or should not have been fearful for their or other employees' safety upon learning of Jackson's viewing of gun websites after a meeting with human resources in which Jackson was offered a demotion. In turn, Jackson contends the decisionmaker, Connor, should have conducted a more searching inquiry into Vazquez and Olshevski's purported fear and Jackson's past viewing of gun sites and reputation as a gun owner. Jackson contends Connor's failure to investigate further before making his decision establishes he acted in "bad faith" sufficient to support a finding of pretext.

Jackson's contentions address whether his discharge was a good or wise decision, not whether discrimination or retaliation motivated Connor's termination of Jackson's employment. *See Keller*, 130 F.3d at 1109. As the District Court aptly noted, "There is . . . nothing suspect about Vazquez at one time being comfortable with the idea of Jackson as a gun owner and a gun web site viewer but later being frightened of it in the context of

8

Jackson's performance management in May of 2007." The record demonstrates that Jackson's circumstances changed—that is, his performance came under scrutiny bringing about a "performance management" process that angered him. Therefore, even assuming Vazquez was aware of Jackson's visiting gun websites from PLANCO in the past, Vazquez's resulting change in attitude toward Jackson's actions does not demonstrate an inconsistency.

Jackson relies on *Kowalski v. L & F Products*, 82 F.3d 1283 (3d Cir. 1996), in support of his contention that Connor acted in bad faith in terminating his employment. In *Kowalski*, we held "where the contents of the primary piece of evidence upon which the defendant relies is contradicted by witness testimony and is not even introduced, summary judgment is inappropriate." *Id.* at 1290. Unlike *Kowalski*, the facts upon which Connor made his decision—visiting of blocked gun websites by a disgruntled employee being "performance managed," and expressed safety fears of employees—are uncontroverted in the record. Accordingly, we agree with the District Court's conclusion that "*Kowalski* does not preclude summary judgment here." *Jackson*, 660 F. Supp. 2d. at 580.

Jackson's arguments that others were not punished for visiting blocked websites are similarly unavailing. Although Jackson may raise an inference of discrimination by demonstrating that "similarly situated persons were treated differently," *Simpson*, 142 F.3d at 645, he offers no similarly situated comparators. Jackson only points to his own testimony that Vazquez visited blocked social-networking sites, and that other employees

9

disregarded the internet policies. But unlike Jackson, Vazquez and others were not being "performance managed." Moreover, as the District Court noted, Jackson introduces no evidence that other angry or disgruntled employees viewed blocked sites about weapons that could be used to cause physical harm—key elements of Connor's decision to terminate Jackson's employment. *Jackson*, 660 F. Supp. 2d at 578.

In light of an uncontroverted record that establishes Jackson was under "performance management," he was disgruntled with his work situation, he visited blocked gun websites the day after being offered a demotion, his immediate supervisors reported they feared him, and the company took actions consistent with a heightened concern about workplace safety, PLANCO's explanation it terminated Jackson's employment because he violated the internet policy and out of fear he might pose a safety risk is not implausible. Jackson has not demonstrated inconsistencies or implausibilities from which a reasonable factfinder could infer PLANCO's actions—particularly those of Connor, the decisionmaker—were a pretext for discrimination owing to Jackson's purported disability or were a pretext for retaliation because of his complaint to human resources or his medical leave. Accordingly, Jackson has not met his "high burden," of producing evidence demonstrating specific "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions," in PLANCO's articulated reasons for terminating his employment. *Fuentes*, 32 F.3d at 765.

## III.

For the foregoing reasons, we will affirm the order of the District Court.

10